STATE OF NORTH CAROLINA v. ODELL LAMONT ALEXANDER, & GEORGE
JUNIOR CUNNINGHAM

No. 258A93

(Filed 29 July 1994)

**1. Assault and Battery § 21 (NCI4th)— assault with a deadly weapon with intent to kill inflicting serious injury—intent to kill—sufficiency of evidence**

The evidence of defendant Cunningham's intent to kill Corey Hill was sufficient to withstand his motion to dismiss considering the nature of the assault, the weapon used, and the circumstances. When a person fires a twelve-gauge shotgun into a moving vehicle four times while at the same time his accomplice is firing a pistol at the vehicle, it may fairly be inferred that the person intended to kill whoever was inside the vehicle.

**Am Jur 2d, Assault and Battery §§ 48 et seq.**

**2. Assault and Battery § 22 (NCI4th)— assault with a deadly weapon with intent to kill inflicting serious injury— serious injury—sufficiency of evidence**

There was sufficient evidence of injury presented at trial to withstand defendants' motion to dismiss charges of assault with a deadly weapon with intent to kill inflicting serious injury where the evidence tended to show that the force of the shotgun blasts into the truck drove shards of glass into the arm and shoulder of Corey Hill; blood was observed on his arm, and treatment for the injuries was given; Hill identified a photograph that he testified showed "cuts and wounds that I sustained from glass coming through the window from the shotgun blast"; the photograph was admitted into evidence and distributed to the jury for its examination; and officer Frank testified that when he arrived at the hospital Corey Hill "appeared to be very shaken. He had some blood, I believe it was on his left arm, I could see he was pretty shaken up."

**Am Jur 2d, Assault and Battery §§ 48 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

3.  **Evidence and Witnesses § 2071 (NCI4th)— assault with a deadly weapon with intent to kill inflicting serious injury— officer's description of wounds as appearing to be buckshot—admissible**

    The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and murder by allowing an officer to testify that a photograph showed small openings that appeared to be buckshot in the assault victim's arm or by allowing the assault victim to testify that photographs of the vehicle he was driving on the night of the murder showed gunshot holes in the vehicle. The officer's testimony with regard to what he saw in the photograph is best described as "shorthand statement of fact" and there is no requirement that the officer's impression be correct for the statement to be admissible. Defendants had an opportunity to and in fact did call the accuracy of the officer's testimony into question during cross-examination, and defendant Alexander, who raised the issue, concedes that he cannot show how he was prejudiced by testimony that photographs of the vehicle showed gunshot holes in the vehicle.

    **Am Jur 2d, Expert and Opinion Evidence §§ 199 et seq.**

4.  **Criminal Law § 819 (NCI4th)— murder and assault—interested witness instruction—denied—no error**

    The trial court's failure to give an interested witness pattern instruction after having agreed to give the instruction at the charge conference was harmless error where evidence of defendants' guilt was comprehensive and substantial, coming from one of the victims as well as other eyewitnesses, and the court included a reference to interest or bias in the instructions on determining whether to believe a witness. Although no conclusion was reached as to whether those instructions would serve as adequate compliance with defendants' request for the pattern instruction, they were of significance in determining prejudice, and defendants failed to show a reasonable possibility that a different result would have been reached had the pattern instruction been given.

    **Am Jur 2d, Trial §§ 855 et seq.**

5. **Evidence and Witnesses § 1082 (NCI4th)— murder and assault—exercise of right to remain silent—no prejudicial error**

There was no prejudicial error in an assault and murder prosecution where the trial court admitted testimony concerning one defendant's exercise of his right to remain silent. Defendant did not object to the line of questioning at issue, the comments were relatively benign, a review of the record indicates that the prosecutor made no attempt to emphasize the fact that defendants did not speak with them after having been arrested, and the evidence of defendants' guilt was substantial and corroborated by a number of eyewitnesses.

**Am Jur 2d, Homicide § 339.**

**Failure to object to improper questions or comments as to defendant's pretrial silence or failure to testify as constituting waiver of right to complain of error—modern cases. 32 ALR4th 774.**

6. **Criminal Law § 1038 (NCI4th)— felony murder—discharging firearm into vehicle—judgment sheet—both convictions listed—remanded**

A case was remanded for amendment of the judgment sheet where the judgment sheet for first-degree murder also listed a conviction for discharging a firearm into occupied property and imposed a sentence of life imprisonment with no further reference to the firearm charge. Although the conviction for discharging a firearm was merged into the first-degree felony murder conviction and became superfluous, and the judgment sheet clearly reflects that the listed convictions were consolidated for judgment, the case was remanded from an abundance of caution.

**Am Jur 2d, Criminal Law §§ 533 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing as to each defendant a sentence of life imprisonment entered by Burroughs, J., at the 18 August 1992 Criminal Session of Superior Court, Catawba County, upon jury verdicts of guilty of first-degree felony murder and discharging a firearm into occupied property, and different sentences as to each defendant for assault with a deadly weapon with intent to kill inflicting serious injury. Defendants' motions to bypass the Court of Appeals as to the discharging a

firearm and assault judgments were allowed 7 July 1993. Heard in the Supreme Court 14 March 1994.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Ann R. Goodman for defendant-appellant Alexander.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant Cunningham.*

MEYER, Justice.

On 26 August 1991, defendants Alexander and Cunningham were indicted for the first-degree murder of Darrin Karon Burch, for the assault with a deadly weapon with intent to kill inflicting serious injury of Corey Eugene Hill, and for discharging a firearm into occupied property, specifically, a vehicle occupied by the victims, Burch and Hill. The charges were consolidated for trial in a capital trial conducted at the 18 August 1992 Criminal Session of Superior Court, Catawba County, before Judge Robert M. Burroughs. Both defendants were found guilty by a jury of first-degree murder under the felony-murder theory, of discharging a firearm into occupied property, and of the assault with a deadly weapon with intent to kill inflicting serious injury charges. Following a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended sentences of life imprisonment for both defendants. Judge Burroughs sentenced defendant Alexander to a prison term of life for the conviction of first-degree murder and to a consecutive term of six years for the felony assault conviction. Defendant Cunningham was sentenced to a term of life for the conviction of first-degree murder and to a consecutive term of twenty years for the felony assault conviction.

The evidence presented at trial tended to show the following. On 27 June 1991, sometime between 11:00 p.m. and 1:00 a.m., Corey Hill drove to an area of Hickory known as "The Hill." After Hill parked the truck he was driving, he was approached by Darrin Burch, who told him that something was going on and that he was going to be in a fight. Hill walked around the corner and placed an order in a local restaurant. While waiting for his food to be prepared, Hill walked back to the truck. Hill noticed a commotion in the area of a nearby church and walked up the street toward it. As he approached the

intersection near the church, he saw Burch on top of and fighting with defendant Alexander. There was a crowd of fifteen to twenty people gathered around, but Hill did not see defendant Cunningham. After the fight broke up, Hill returned to the restaurant to pick up his food.

As Hill walked back toward the restaurant, Burch came past and spoke to him. As Burch was passing, Hill told him he would pick him up down the street. Hill picked up his food from the restaurant, got in his truck, and went in search of Burch.

Hill circled the area until he heard Burch call out to him from behind some bushes. Hill stopped the truck and backed up, and Burch got in. Hill asked him which way to go, and Burch told him to keep going the same way.

Hill drove back past the restaurant and started to turn left at the next intersection. As he did so, he caught a "glimpse" of defendant Cunningham in the rear view mirror. Cunningham had a shotgun. Shots were fired, and Hill recognized the sounds of a shotgun and a pistol. One shot struck Burch in the head. Burch said, "Oh sh—," and fell over into Hill's lap. Burch did not speak anymore.

Hill drove away from the scene and took Burch directly to the emergency room at Frye Regional Hospital. Some time later, he drove through the area of the shooting in the patrol car of Officer Joe Frank of the Hickory Police Department and observed both defendants as they were being questioned by Hickory Police Officer Phillip Thorpe. Hill identified both defendants as the men who had fired the shots, and they were arrested.

Witness Michael Prysock testified that he had been in the area at the time of the shooting. He saw defendant Alexander and Rodney Cunningham, defendant Cunningham's brother who was handicapped and walked with the aid of crutches, walk past Burch while Burch was playing craps with a person named Stickman. Rodney Cunningham was drunk and waving a gun around, and Burch told him to put the gun away. Rodney started cursing at Burch, who then punched defendant Alexander. A fight between defendant Alexander and Burch ensued, and as a result, defendant Alexander was knocked unconscious. After the fight, Burch ran away from the scene, and Prysock did not see him again.

Some time later, Prysock saw defendant Cunningham standing on South Center Street with a shotgun. Defendant Alexander walked

over to him carrying a pistol. Prysock heard one of them say, "Where did they go?" At that point, Hill drove by in the truck, and someone yelled, "There they go." As the truck was turning, both defendants opened fire, standing side by side in the middle of South Center Street. Defendant Cunningham fired the shotgun at least four times; Prysock was unable to count the number of shots fired by defendant Alexander. After the shooting, the truck sped away.

An autopsy conducted on Burch's body showed that he died from a single bullet wound to the head. The bullet entered behind his left ear, passed through his brain, bounced off of the front of his skull, and remained lodged in the brain until recovered by the pathologist. The bullet was a Winchester 9-millimeter.

Other facts will be presented as necessary for the proper resolution of defendants' assignments of error.

[1] In the first assignment of error, defendant Cunningham contends that, as to him, the evidence was insufficient to show that he had the intent to kill Corey Hill. Both defendants contend that the trial court erred when it refused to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury. As the basis for their contention, defendants claim that there was insufficient evidence from which the jury could conclude beyond a reasonable doubt that Corey Hill suffered a serious injury.

In order to withstand a motion to dismiss the charge at issue, the State must present substantial evidence of the following elements: (1) an assault, (2) with a deadly weapon, (3) an intent to kill, and (4) infliction of a serious injury not resulting in death. *State v. James*, 321 N.C. 676, 687, 365 S.E.2d 579, 586 (1988). Substantial evidence is that amount of evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981); *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 860-61 (1981). When considering a motion to dismiss, "[i]f the trial court determines that a *reasonable* inference of the defendant's guilt *may* be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Smith*, 40 N.C. App. 72, 79, 252 S.E.2d 535, 540 (1979). In addition, it is well settled that the evidence is to be considered in the light most favorable to the State and that the State is entitled to every reasonable inference to be drawn therefrom. *State v. Robbins*, 309 N.C. 771, 774-75, 309 S.E.2d 188, 190 (1983).

With regard to defendant Cunningham's assertion that the evidence was insufficient to show that he had an intent to kill Corey Hill, he argues that the State presented no evidence of his motive to kill Corey Hill, that he knew who was in the car, or that he knew he had injured anyone during the shooting.

" 'An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred.' " *State v. Ferguson*, 261 N.C. 558, 561, 135 S.E.2d 626, 629 (1964) (quoting *State v. Cauley*, 244 N.C. 701, 708, 94 S.E.2d 915, 921 (1956)). "[T]he nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *State v. White*, 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982).

Applying these principles to the present case, we note that the evidence showed that it was defendant Cunningham who was armed with the shotgun during the time of the shooting and that he fired the gun four times at Corey Hill's truck. Although it appears that defendant Cunningham was not present during the initial confrontation between Burch and defendant Alexander, his brother Rodney Cunningham, who walked with the aid of crutches, was present, and during the confrontation, Rodney Cunningham's gun was taken away from him. We further note that when a person fires a twelve-gauge shotgun into a moving vehicle four times while at the same time his accomplice is firing a pistol at the vehicle, it may fairly be inferred that the person intended to kill whoever was inside the vehicle.

Considering the nature of the assault, the weapon used, and the circumstances, we hold that the evidence of defendant Cunningham's intent to kill Corey Hill was sufficient to withstand his motion to dismiss. Accordingly, the trial judge properly denied the motion, and defendant Cunningham's assignment of error on these grounds is overruled.

[2] Both defendants contend that the evidence of injuries sustained by Corey Hill was insufficient to allow the jury to determine whether he had sustained serious injury as a result of the assault. We disagree.

"The term 'inflicts serious injury,' under G.S. 14-32(b)[1], means physical or bodily injury resulting from an assault with a deadly

---

1. N.C.G.S. § 14-32(b) has been amended effective 1 January 1995.

weapon." *State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 373 (1978) (quoting *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962)). The Court in *State v. Ferguson* had earlier defined the term in this manner and noted that " '[f]urther definition seems neither wise nor desirable.' " *Ferguson*, 261 N.C. at 560, 135 S.E.2d at 628 (quoting *State v. Jones*, 258 N.C. at 91, 128 S.E.2d at 3).

As this Court explained in *State v. Hedgepeth*,

Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. *State v. James*, 321 N.C. 676, 365 S.E.2d 579 (1988). A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. *State v. Owens*, 65 N.C. App. 107, 308 S.E.2d 494 (1983). Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury. *State v. Joyner*, 295 N.C. 55, 243 S.E.2d 367 (1978).

*State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991).

Cases that have addressed the issue of the sufficiency of evidence of serious injury appear to stand for the proposition that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious. *See Joyner*, 295 N.C. at 65, 243 S.E.2d at 374 ("there being evidence of physical or bodily injury to the victim, the question of the nature of these injuries was . . . properly submitted to the jury").

In the present case, the evidence tended to show that the force of the shotgun blasts into the truck drove shards of glass into the arm and shoulder of Corey Hill. Blood was observed on his arm, and treatment for the injuries was given. Hill identified a photograph that he testified showed "cuts and wounds that I sustained from glass coming through the window from the shotgun blast." The photograph was admitted into evidence and distributed to the jury for its examination. Officer Frank testified that when he arrived at the hospital, Corey Hill "appeared to be very shaken. He had some blood, I believe it was on his left arm, I could see he was pretty shaken up."

We hold that there was sufficient evidence of injury presented at trial to withstand defendants' motion to dismiss. The trial judge properly denied the motion, and defendants' assignment of error on these grounds is overruled.

**[3]** In their next assignment of error, defendants contend that the trial court erred when it allowed Officer Frank to testify that a photograph shown to him at trial showed "small openings that appeared to be buckshot" on Corey Hill's arm. Both defendants contend that the comment amounted to an impermissible lay witness opinion and resulted in unfair prejudice in their trial.

The portion of Officer Frank's testimony upon which this assignment of error is based included the following exchanges:

Q: Describe for the ladies and gentlemen of the jury what you saw on his arm, sir?

A: I saw some blood, several small openings that appeared to be buckshot.

MR. CUMMINGS: Objection to what appeared to be.

MR. PORTWOOD: Objection.

THE COURT: Overruled, overruled, go ahead.

Q: They appeared to be buckshot, is that correct?

A: Yes.

Later, on cross-examination, Officer Frank testified that he did not distinguish between buckshot and birdshot, but that he thought that Corey Hill had pieces of buckshot in his arm. He further admitted that he did not actually see anything in Hill's arm and that, from his own knowledge, he did not know if there were pieces of buckshot or anything else in Corey Hill's arm. When asked why he characterized what he saw as "buckshot," he replied, "It's just a term." In addition, Corey Hill had already testified that his wounds were caused by "glass coming through the window from the shotgun blast."

The admissibility of lay witness opinion testimony is governed by N.C.G.S. § 8C-1, Rule 701, which provides that:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1988).

Defendant Cunningham contends that the comment did not meet the first requirement for a lay witness opinion because cross-

examination revealed that Officer Frank's comment was only an indication of what the photograph appeared to show and that he did not in fact have any firsthand knowledge of whether the wounds were actually caused by buckshot. Both defendants contend that because a photograph of Corey Hill's arm was available for the jury to view, the testimony was inadmissible because it was not "helpful to a clear understanding of his testimony or the determination of a fact in issue." We disagree.

Officer Frank's testimony with regard to what he saw in the photograph is best described as what the Court has characterized as a "shorthand statement of fact." N.C.G.S. § 8C-1, Rule 701, official commentary. We addressed the admissibility of such statements in *State v. Spaulding*:

> This Court has long held that a witness may state the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Such statements are usually referred to as shorthand statements of facts.

*State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975) (quoting *State v. Skeen*, 182 N.C. 844, 845, 109 S.E. 71, 72 (1921)), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976).

We had occasion to apply these principles in *State v. Williams*, 319 N.C. 73, 352 S.E.2d 428 (1987). In that case, the witness testified that he saw "gunshot wounds" on the victim's body and that the victim's "left arm had been shot." *Id.* at 77-78, 352 S.E.2d at 431-32. The trial court sustained the defendant's objections to the testimony, but defendant nonetheless appealed, arguing that the trial court erred by failing to instruct the jury to disregard the testimony. We held that it would not have been error to admit the testimony, finding the testimony admissible as a shorthand statement of fact. *Id.* at 78, 352 S.E.2d at 432. The same is true in the present case. Despite the fact that cross-examination and other testimony indicated that Officer Frank's impression may not have been correct, there is no such requirement for the admissibility of such a statement. Defendants had an opportunity to and in fact did call the accuracy of Officer Frank's testimony into question during cross-examination. We hold that it was not error to admit Officer Frank's testimony; accordingly, defendants' assignment of error on these grounds is overruled.

In a related assignment of error, defendant Alexander contends that it was error to allow Corey Hill to testify that photographs of the vehicle that he was driving on the night of the murder showed "gunshot holes" in the vehicle. Defendant concedes that he cannot show how he was prejudiced by this testimony. For the reasons given above, we hold that it was not error to allow Corey Hill to give this testimony; accordingly, defendant Alexander's assignment of error is overruled.

[4] In their next assignment of error, defendants contend that the trial court committed prejudicial error when it failed to give an instruction on the treatment of the testimony of an interested witness.

During the charge conference conducted at the conclusion of the evidence, counsel for defendant Cunningham submitted a written request that the jury be instructed in accordance with N.C.P.I.—Crim. 104.20, which concerns testimony of interested witnesses. The trial court agreed to give the instruction; during the subsequent charge to the jury, however, the instruction was, for an unspecified reason, omitted.

This Court has had occasion to determine the impact of the trial court's failure to give an agreed-upon instruction. In *State v. Ross*, the trial court inadvertently neglected to give an instruction on defendant's decision not to testify. We first noted that

a request for an instruction at the charge conference is sufficient compliance with the rule [for assignments of error on appeal] to warrant our full review on appeal where the requested instruction is subsequently promised but not given, notwithstanding any failure to bring the error to the trial judge's attention at the end of the instructions.

*State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988); *see also State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987). We next undertook to determine the standard that was to be applied in the determination of prejudice. We concluded that, because the trial judge's error implicated the defendant's rights under the Fifth Amendment to the United States Constitution, the relevant standard was provided in N.C.G.S. § 15A-1443(b), which required the State to demonstrate beyond a reasonable doubt that the error was harmless. *Ross*, 322 N.C. at 266, 367 S.E.2d at 892.

In *State v. Pakulski*, however, we determined that the proper standard by which to determine prejudice for failure to give an

instruction on impeaching a witness with a prior inconsistent statement would be that contained in N.C.G.S. § 15A-1443(a), which required the defendant to show that "there [was] a reasonable possibility that had the error not been committed, a different result would have been reached" at trial. *State v. Pakulski*, 319 N.C. at 575, 356 S.E.2d at 327. As part of the basis for this determination, we noted that "[t]his Court has held that instructions on a witness' credibility relate to a subordinate feature on which the court need not charge absent a request from counsel." *Id.*; *see also State v. Eakins*, 292 N.C. 445, 447, 233 S.E.2d 387, 388 (1977). In *State v. Vick*, we specifically held that "an instruction to scrutinize the testimony of a witness on the ground of interest or bias is a subordinate feature of the case which does not require the trial judge to give the cautionary instruction *unless there is a request for such instruction.*" *State v. Vick*, 287 N.C. 37, 43, 213 S.E.2d 335, 339 (1975). We conclude that the same standard of review is to be applied in the present case, where the requested instruction concerned the credibility of witnesses who may have had an interest in the case.

A review of the record indicates that defendants have failed to carry the burden of showing that there is a reasonable possibility that had the instruction been given, a different result would have been reached at trial. Evidence of defendants' guilt was comprehensive and substantial, coming from one of the victims as well as other eyewitnesses. In addition, we note that the trial court did include the following principles in its instructions to the jury:

> In determining whether to believe any witness, you should aply [sic] the same tests of truthfulness which you apply in your every day [sic] affairs. As applied to this trail [sic], these tests may include the opportunity of the witness to see, to hear, to know or to remember the facts or occurrences about which the witness has testified; *any interest or bias or prejudice that the witness may have*; the apparent understanding and fairness of the witness . . . .

(Emphasis added.) Although we reach no conclusion with regard to whether these instructions would serve as adequate compliance with defendants' request for the pattern instruction on interested witnesses, we find it to be of significance with regard to the determination of prejudice in the trial. We hold that the trial court's failure to give the requested instruction was harmless error; accordingly, defendants are not entitled to a new trial on these grounds.

**[5]** In an assignment of error pertaining only to defendant Cunningham, he contends that the trial court erred when it admitted testimony concerning defendant's exercise of his right to remain silent.

The following exchange occurred at.trial:

Q: [Prosecutor, questioning Officer Steve Hunt]: Did you make any attempt to speak to these individuals, Rodney Cunningham or George Cunningham or Odell Alexander?

A: I did, sir.

Q: Who did you attempt to speak to?

A: I attempted to speak to Mr. Cunningham first[.]

Q: George Cunningham?

A: Yes, sir, Mr. George Junior Cunningham.

Q: To your knowledge, had he been advised of his rights prior to that time?

A: He had been, sir.

Q: Who had advised him of his rights?

A: Officer Bain Weinrich.

Q: And did Mr. Cunningham speak to you or talk to you at all?

A: No, sir. If it was, it was to indicate that he wished not to talk to me.

Q: What about the other two gentlemen, did you try to speak to them or did they talk?

A: I did, sir. Mr. Rodney Cunningham was quite intoxicated, and the other gentleman, if he said anything to me at all was that he wished not to talk to me, Mr. Odell Lamont Alexander.

Defendant Cunningham contends that this exchange violated the prohibition against the admission of testimony relating to defendant's exercise of his privilege against self-incrimination. *See State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986); *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986); *State v. McCall*, 286 N.C. 472, 212 S.E.2d 132 (1975); *State v. Castor*, 285 N.C. 286, 204 S.E.2d 848 (1974).

The prohibition against such references was explained by the Supreme Court in *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976). In that case, the defendants took the stand and offered an explanation

of the events leading to their arrest for the sale of marijuana, claiming that they had been framed. The Court noted:

> Petitioners' explanation of the events presented some difficulty for the prosecution, as it was not entirely implausible and there was little if any direct evidence to contradict it. As part of a wide-ranging cross-examination for impeachment purposes, and in an effort to undercut the explanation, the prosecutor asked each petitioner . . . why he had not told the frameup story to Agent Beamer when he arrested petitioners.

*Id.* at 613, 49 L. Ed. 2d at 95. The defendants in the case objected to this form of cross-examination. The Court in *Doyle* reversed the convictions, reasoning that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial," *id.* at 618, 49 L. Ed. 2d at 98, and held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment," *id.* at 619, 49 L. Ed. 2d at 98.

We have applied the principles enunciated in *Doyle* on a number of occasions. In *State v. Freeland,* the defendant assigned as error the trial court's refusal to declare a mistrial following testimony that the defendant had asserted his right to silence and requested a lawyer after being arrested and advised of his rights. *Freeland,* 316 N.C. at 18, 340 S.E.2d at 38. In holding that the error was harmless beyond a reasonable doubt, we focused on the fact that following defense counsel's timely objection and motion to strike, the trial court gave curative instructions, but we also noted that "the prosecutor in this case was not attempting to capitalize on defendant's silence or his request for counsel." *Id.* at 19, 340 S.E.2d at 38.

In *State v. Walker,* the State's references to defendant's silence were markedly more pointed and were more specifically directed at discrediting the defendant's alibi defense presented at trial. *Walker,* 316 N.C. at 36-37, 340 S.E.2d at 82. Despite this, however, we noted that "the prosecutor was developing the defendant's testimony and did not dwell on the fact that the defendant had not mentioned his alibi defense to the authorities following his arrest." *Id.* at 39, 340 S.E.2d at 84. In addition, the defendant in that case failed to object to the line of questioning; we accordingly analyzed the impact of the references pursuant to a "plain error" analysis, *id.* at 38, 340 S.E.2d at 83, which we described as follows:

"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*Id.* at 39, 340 S.E.2d at 83 (quoting *State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (quoting with approval *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982))). After doing so, we concluded that the error committed did not cause the jury "to reach a different verdict than it would have reached otherwise." *Id.* at 40, 340 S.E.2d at 84.

We reach the same conclusion in the present case. Defendant did not object to the line of questioning at issue, the comments were relatively benign, and a review of the record indicates that the prosecutor made no attempt to emphasize the fact that defendants did not speak with them after having been arrested. In addition, as we have already noted, the evidence of defendants' guilt was substantial and corroborated by a number of eyewitnesses. The impropriety of the comments was not sufficient to warrant a new trial; accordingly, defendant Cunningham's assignment of error on these grounds is overruled. In addition, to the extent that defendant Alexander may have been affected by the witness' comment, he also is entitled to no relief.

[6] In a final assignment of error asserted on appeal by defendant Cunningham, he contends, and the State agrees, that he is entitled to have judgment arrested for the conviction of discharging a firearm into an occupied motor vehicle, the underlying felony in the conviction for felony murder.

When a defendant is convicted of a felony that serves as the basis for a conviction of felony murder, he is entitled to have the judgment arrested for the underlying felony. *See State v. Weeks*, 322 N.C. 152, 176, 367 S.E.2d 895, 909 (1985); *State v. Martin*, 309 N.C. 465, 482, 308 S.E.2d 277, 287 (1983); *State v. Jackson*, 309 N.C. 26, 43, 305 S.E.2d

STATE v. ALEXANDER

[337 N.C. 182 (1994)]

703, 715-16 (1983); *State v. Silhan*, 302 N.C. 223, 261-62, 275 S.E.2d 450, 477 (1981).

This assignment of error is based upon the fact that the judgment sheet for the conviction of first-degree murder also lists the conviction for discharging a firearm into occupied property. The judgment sheet imposes a sentence of life imprisonment with no further reference to the firearm charge.

The State takes the position that since, as a matter of law, the conviction for discharging a firearm into occupied property merges into the first-degree felony-murder conviction, the notation on the judgment sheet referring to the firearm charge is superfluous and has no legal significance. We agree. In addition, the judgment sheet clearly reflects that the listed convictions "are consolidated for the purpose of judgment" and states "that the defendant be imprisoned for a term of Life." Out of an abundance of caution, however, we direct that this case be remanded to the trial court for amendment of the judgment sheet in order that it may more clearly reflect that the judgment for the firearm offense has been arrested. In addition, although this assignment of error was not asserted on appeal by defendant Alexander, his judgment sheet was prepared in the same manner; accordingly, we direct that the same action be taken with regard to his judgment for conviction of first-degree felony murder.

After a careful review of the transcript, the record, and the briefs and oral argument of counsel for all parties, we conclude that both defendants received a fair trial, free of prejudicial error.

## AS TO DEFENDANT ALEXANDER:

91CRS8739, COUNT 1, FIRST-DEGREE MURDER: NO ERROR;

91CRS8739, COUNT 2, ASSAULT WITH A DEADLY WEAPON WITH INTENT TO KILL INFLICTING SERIOUS INJURY: NO ERROR;

91CRS8739, COUNT 2, DISCHARGING A FIREARM INTO OCCUPIED PROPERTY: NO ERROR, REMANDED TO THE TRIAL COURT FOR AMENDMENT OF JUDGMENT SHEET.

## AS TO DEFENDANT CUNNINGHAM:

91CRS8735, COUNT 1, FIRST-DEGREE MURDER: NO ERROR;

91CRS8735, COUNT 2, ASSAULT WITH A DEADLY WEAPON WITH INTENT TO KILL INFLICTING SERIOUS INJURY: NO ERROR;

91CRS8735, COUNT 2, DISCHARGING A FIREARM INTO OCCU-PIED PROPERTY: NO ERROR, REMANDED TO THE TRIAL COURT FOR AMENDMENT OF JUDGMENT SHEET.