STATE OF NORTH CAROLINA v. CRAIG DARRYL GRIGSBY

No. 364PA99

(Filed 7 April 2000)

**Assault— intent to kill—sufficiency of evidence**

The State's evidence of defendant's intent to kill was sufficient to withstand defendant's motion to dismiss a charge of assault with a deadly weapon with intent to kill inflicting serious injury where it tended to show that defendant threw the victim, an assistant restaurant manager, to his knees; defendant was carrying a knife and demanded to know how many people were in the building and how much money was there; defendant tied the victim's hands with duct tape, and the victim told defendant not to hurt him, that he would give him whatever he wanted; defendant jumped onto the victim's back once the victim seized defendant's knife and struggled with the victim, causing the victim to be seriously injured; defendant threatened the victim before and after the scuffle without appearing to hear the victim's acquiescence in his demands; defendant had attempted to obtain and had subsequently regretted not being equipped with a gun at the assault; and defendant had instead obtained and chosen to use an assault-type knife with finger holes, designed to enable an assailant to repeatedly stab a victim without losing his grip.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 134 N.C. App. 315, 517 S.E.2d 195 (1999), vacating a conviction and sentence for assault with a deadly weapon with intent to kill inflicting serious injury entered by Gore, J., on 30 October 1997 in Superior Court, New Hanover County, and remanding for entry of a verdict for a lesser included offense and for resentencing. Heard in the Supreme Court 15 February 2000.

*Michael F. Easley, Attorney General, by Laura E. Crumpler and Donald R. Esposito, Jr., Assistant Attorneys General, for the State-appellant.*

*Nora Henry Hargrove for defendant-appellee.*

FREEMAN, Justice.

On 14 April 1997 defendant was indicted on charges of assault with a deadly weapon with intent to kill inflicting serious injury and

attempted robbery with a dangerous weapon. A jury found defendant guilty as charged. On 30 October 1997 defendant was sentenced to 133 to 169 months' incarceration for the assault conviction and to 117 to 150 months' incarceration for the robbery conviction, to run consecutively. The Court of Appeals concluded that each element of assault with a deadly weapon inflicting serious injury was supported by evidence in the record but that the evidence was insufficient as to defendant's intent to kill. It accordingly vacated defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious injury and ordered the case be remanded for entry of a guilty verdict on the lesser included offense. *State v. Grigsby*, 134 N.C. App. 315, 517 S.E.2d 195 (1999). We reverse and remand for reinstatement of the conviction and judgment entered by the trial court on 30 October 1997.

The victim, David Love, testified that around 7:00 a.m. on 10 January 1996 he arrived at TGI Friday's restaurant in Wilmington, North Carolina, where he worked as assistant general manager. He heard a buzzer from the locked back door of the restaurant and let in a beer salesman to check inventory. Some time later, Love heard the buzzer sound again, and, assuming it was the salesman, he unlocked and opened the door. He was immediately grabbed by his hands and thrown to his knees. His assailant, whom he later identified as defendant, appeared to be very agitated and started yelling and repeatedly demanding to know how many people were in the building and how much money was there. Defendant began tying Love's hands with duct tape, and Love told defendant not to hurt him, that he would give him whatever he wanted. Leaving Love on his knees with his hands bound, defendant put down the knife he had carried in with him and went over to a bag and pulled out a can of lighter fluid, threatening to burn Love if he did not get what he wanted.[1]

At this point, Love, who had been robbed before, noted defendant had made no attempt to disguise himself and began to fear for his life: "[I]f you're going to rob a place and you've got a deadly weapon with you, you['d] better cover your face up unless you're not planning on leaving any witnesses." Love figured he would "rather be stabbed to death than burned to death" and lunged for the knife while defendant was pulling the can of lighter fluid from his bag. Defendant then jumped onto Love's back, but Love had a firm grip on the knife, which

---

1. Upon asking whether it could consider the lighter fluid in determining whether defendant had assaulted Love with the intent to kill, the jury was instructed it could not, that it could consider only the knife for that purpose.

was an "assault-type" knife with finger holes. Love started "wailing [sic] away" at defendant with the knife and was certain he had stabbed defendant. Defendant then started running for the back door; but Love, who thought defendant might have another knife or gun under his coat, managed to stab him once more in the back or shoulder. Defendant then fled out the back door. Love discovered shortly afterwards that he, too, had been stabbed and his lung punctured. He later surmised that, although he had held the knife the entire time after defendant put it down, he had been cut when defendant jumped on his back and grabbed his arms. Love said that the entire episode took only about five minutes, and the struggle itself less than a minute, but he felt nothing but "total fear." Although Love was offering to give defendant whatever he wanted, defendant was not listening to him, but was "like a machine."

An acquaintance of defendant's later testified that during the preceding year defendant had asked him if he knew where to find a gun. About a week before the robbery, defendant asked the witness, who had baby-sat for defendant's sister, if he knew how to drive from the restaurant to Hampstead, where defendant's sister lived. He had also accompanied defendant to a pawnshop to buy a knife (different from that used in the robbery), which the witness later gave away.

Another witness testified that during the same two-week period in early January 1996 when the robbery occurred and while defendant had been staying at his sister's, defendant asked where he could get a gun. The witness did not know, and said so, and that was the end of the matter. But when the witness saw defendant shortly after the scuffle with Love, defendant remarked to him that "if [he] had had a gun, [he] would have gotten away with it."

The only issue before this Court is whether the evidence was sufficient as to defendant's intent to kill to withstand defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury. The elements of this charge are (1) an assault, (2) with a deadly weapon, (3) an intent to kill, and (4) infliction of a serious injury not resulting in death. *State v. James*, 321 N.C. 676, 687, 365 S.E.2d 579, 586 (1988). In order to withstand a motion to dismiss this charge, the State must present "substantial evidence" of each element. *Id.* " 'Substantial evidence is that amount of evidence that a reasonable mind might accept as adequate to support a conclusion.' " *State v. Alexander*, 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994) (quoting *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981)). "When considering a motion to dismiss, '[i]f the trial court

determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may support reasonable inferences of the defendant's innocence.' " *Id.* (quoting *State v. Smith*, 40 N.C. App. 72, 79, 252 S.E.2d 535, 540 (1979)). "[T]he evidence is to be considered in the light most favorable to the State and . . . the State is entitled to every reasonable inference to be drawn therefrom." *Id.*

The Court of Appeals correctly determined that substantial evidence supported each of the three elements of the lesser included offense, assault with a deadly weapon inflicting serious injury. We conclude that, in addition, evidence in the record supports the intent-to-kill element of the greater offense. "An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Cauley*, 244 N.C. 701, 708, 94 S.E.2d 915, 921 (1956), *quoted in Alexander*, 337 N.C. at 188, 446 S.E.2d at 87. "[T]he nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *Alexander*, 337 N.C. at 188, 446 S.E.2d at 87 (quoting *State v. White*, 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982)). Moreover, an assailant "must be held to intend the natural consequences of his deliberate act." *State v. Jones*, 18 N.C. App. 531, 534, 197 S.E.2d 268, 270, *cert. denied*, 283 N.C. 756, 198 S.E.2d 726 (1973).

Considered in the light most favorable to the State, the following facts and circumstances surrounding defendant's assault of Love reasonably support the inference that defendant's intent was not only to rob or to injure, but to kill: that defendant leapt onto Love's back once Love seized defendant's knife and that he struggled with Love, causing Love to be seriously injured; that defendant threatened Love before and after the scuffle without appearing to hear Love's acquiescence in his demands (*cf. State v. Irwin*, 55 N.C. App. 305, 285 S.E.2d 345 (1982) (evidence that defendant had threatened to kill victim if demands were not met was conditional intent to kill, or specific intent *not* to kill if the victims complied)); that defendant had attempted to obtain and had subsequently regretted not being equipped with a gun at the assault; and that defendant had instead obtained and chosen to use an assault-type knife with finger-holes, designed to enable an assailant to repeatedly stab a victim without losing his grip.

We hold that the evidence, viewed in the light most favorable to the State, supports the charge of assault with a deadly weapon with intent to kill inflicting serious injury, and that the trial court did not err in submitting that charge for the consideration of the jury. The Court of Appeals thus erred in vacating and remanding this case for entry of judgment and sentencing on the lesser included offense.

REVERSED.