STATE OF NORTH CAROLINA v. KIMBERLY FRANCES TEATE

No. COA05-1679

(Filed 19 December 2006)

## 1. Evidence— license checkpoint—motion to suppress—probable cause

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress evidence gathered from the stop at a license checkpoint based on alleged lack of probable cause, because: (1) the officer testified that defendant failed to stop at the license checkpoint, that she had an odor of alcohol about her as well as glassy eyes and slurred speech, that she had difficulty performing counting tests, and that her Alco-Sensor readings indicated intoxication; (2) although the officer was not certified to conduct two counting tests or to administer an Alco-Sensor test, defendant did not object to the introduction of this evidence; and (3) the circumstances supported a conclusion that the officer had probable cause to arrest defendant for DWI including that the officer detected an odor of alcohol on defendant who drove through a checkpoint, displayed an open container of alcohol in the vehicle, exhibited slurred speech and diminished motor skills, and registered as intoxicated on Alco-Sensor tests.

## 2. Motor Vehicles— driving while impaired—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of driving while impaired under N.C.G.S. § 20-138.1 at the close of the State's evidence and at the close of all evidence, because: (1) the State presented evidence that defendant was appreciably impaired as judged by her conduct at a license checkpoint; and (2) the State presented further evidence that defendant had registered an Intoxilyzer reading of 0.08 after her arrest.

## 3. Evidence— breath alcohol level—retrograde extrapolation model

The trial court did not abuse its discretion in a driving while impaired case by admitting the testimony of a research scientist and training specialist in forensic testing for the Alcohol Branch of the Department of Health and Human Services that using a retrograde extrapolation model indicated defendant's breath alcohol

level was likely .10 at the time she was stopped by police, because: (1) the Court of Appeals has previously allowed the admission of retrograde extrapolation evidence in DWI cases even where the testimony concerned an average alcohol elimination rate rather than defendant's actual elimination rate; (2) the average alcohol elimination rate offered by the witness could aid a finder of fact in determining whether it was more or less likely defendant's breath alcohol level exceeded the statutory limit for DWI purposes; and (3) the evidence was sufficiently reliable and relevant, the expert was qualified, and defendant registered a .08 blood alcohol level when actually tested.

**4. Criminal Law— DWI—jury instruction—failure to specify basis for guilt—plain error analysis**

The trial court did not commit plain error in a driving while impaired case by failing to instruct the jury that it must specify the basis for finding defendant guilty, because: (1) there was abundant evidence for the jury to find defendant guilty under either the appreciably impaired or the per se prong of the DWI statute; and (2) assuming arguendo that it was error not to instruct the jury to specify which prong it was relying on in finding defendant guilty, defendant cannot show the jury likely would have reached a different verdict if given such an instruction.

**5. Appeal and Error— preservation of issues—failure to argue**

Assignments of error that defendant failed to argue on appeal are deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by defendant from judgment entered 4 August 2005 by Judge Larry G. Ford in Rowan County Superior Court. Heard in the Court of Appeals 13 September 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Patricia A. Duffy, for the State.*

*Don Willey for defendant-appellant.*

CALABRIA, Judge.

Kimberly Frances Teate ("defendant") appeals from a judgment entered upon a jury verdict finding her guilty of driving while impaired ("DWI"). We find no error.

Defendant pled guilty to DWI in Rowan County District Court and was sentenced as a Level Two offender and placed on probation for

36 months. Defendant appealed the District Court's judgment to Superior Court for trial *de novo*.

At trial in Rowan County Superior Court, Officer Garrett Doty ("Officer Doty") of the Granite Quarry Police Department, testified he and five other officers conducted a license checkpoint at the intersection of Faith and Byrd Road in the early morning hours of 1 November 2003. Shortly after one o'clock that morning, Officer Doty observed a truck drive through the checkpoint, nearly striking him and two other officers. Officer Doty slapped the back of the truck and yelled for the driver to stop. The truck stopped approximately 275 feet away from Officer Doty. Officer Doty noticed a very strong odor of alcohol coming from the vehicle. Since there were three people in the truck, Officer Doty asked defendant, who was driving, to step out of the vehicle.

Officer Doty testified that after defendant stepped out of the vehicle, he noticed a moderate odor of alcohol coming from defendant, observed that her eyes appeared glassy and her speech was slurred and she had trouble completing sentences. Officer Doty then conducted two field sobriety tests. He first instructed defendant to count backwards from number 67 to 58, and next she was to count one through four and back touching each finger with her thumb.

After forming an opinion that defendant was appreciably impaired, Officer Doty placed defendant under arrest and transported her to the Salisbury Police Department, where he advised her of her rights and administered an Intoxilyzer test. The Intoxilyzer registered a breath alcohol level of 0.08. The State presented Paul Glover ("Glover"), an expert witness in retrograde extrapolation of average alcohol elimination rates. Glover testified that defendant's breath alcohol concentration at the time of the stop was .10.

Defendant presented evidence that she had consumed one alcoholic beverage consisting of Wild Turkey bourbon and Diet Sundrop prior to driving and had mixed a second drink and placed it in the console of the vehicle. Defendant presented further evidence that when she approached the checkpoint, she believed she was coming up on an accident scene, and that the officers, with their flashlights, were motioning for her to continue driving.

On 4 August 2005 the jury returned a verdict finding defendant guilty of DWI. Defendant was sentenced to a Level Two punishment:

a minimum term of 12 months and a maximum term of 12 months in the North Carolina Department of Correction. That sentence was suspended and defendant was placed on supervised probation for 30 months. As a special condition of probation, she was to serve seven days in the custody of the Rowan County Sheriff. Defendant appeals from this judgment.

## I.  Motion to Suppress

In a pre-trial hearing on defendant's motion to suppress the evidence for lack of probable cause, Officer Doty explained to the court that he conducted four roadside tests: the two counting tests described at trial, as well as a horizontal gaze nystagmus test ("HGN") and four Alco-Sensor tests, which indicated impairment. The trial court refused to consider the HGN test as a basis for Officer Doty's determination of probable cause, but the court considered the two counting tests and the Alco-Sensor test, despite the fact that Officer Doty was not certified to administer those tests. Officer Doty testified that he employed the non-standard counting tests because defendant reported balance problems and was wearing high heeled boots. As a result, he considered it unfair to subject her to the traditional walk-and-turn and stand-on-one-leg tests that he was certified to administer. Based on the odor of alcohol, defendant's glassy eyes and slurred speech, her difficulty with the counting tests, and the Alco-Sensor readings, Officer Doty concluded that defendant was appreciably impaired.

[1] Defendant initially argues that the trial court erred in denying her motion to suppress evidence gathered from the stop since the officer lacked probable cause to arrest defendant for DWI. "[T]he standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.'" *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted). We will not disturb the trial court's conclusions where they are supported by its findings of fact. *State v. Logner*, 148 N.C. App. 135, 138, 557 S.E.2d 191, 193-94 (2001).

Here, the trial court's findings included, *inter alia*:

7.  That the defendant did drive through the license checkpoint in a dual wheel Chevrolet truck without stopping.

. . .

STATE v. TEATE

[180 N.C. App. 601 (2006)]

16. That Officer Doty immediately smelled a strong odor of alcohol coming from the truck.

. . .

20. That when [defendant] got to the rear of the truck, Officer Doty testified that he smelled an odor that he characterized as moderate on the defendant's breath.

. . .

22. That the defendant told Officer Doty that she had drank "some."

23. That he noticed that her eyes appeared "glassy."

24. That he noticed that her speech was slurred and that she appeared "thick tongued," and was having trouble with her words.

. . .

34. That [when asked to count backwards from sixty-seven to fifty-eight] the defendant hesitated on the numbers sixty-one (61) and fifty-nine (59) enough to be noticeable to him.

35. That Officer Doty also asked the defendant to count one, two, three, four and then, four, three, two, one, while touching her four fingers to her thumb one at a time while she counted.

. . .

39. That on the second cycle of counting, the defendant missed touching her second finger twice and instead of counting one, two, three, four, then four, three, two, one, she counted one, two, three, four, then one, two, three, four.

40. That on the third cycle of counting, the defendant counted one, two, three, four, then four, three, three, one and missed the second finger touching.

41. That Officer Doty testified that he then asked the defendant to submit to a breath [test] using the Alco-Sensor instrument.

42. That Officer Doty had been trained by his field training officer how to use that instrument, but is not certified to conduct such a test.

43. That the Alco-Sensor instrument was assigned to his patrol car and no one else used his patrol car except himself.

44. That the instrument had undergone its required preventative maintenance according to the log maintained in the Granite Quarry Police Department.

45. That the defendant blew into the Alco-Sensor two times and the results were .08 both times.

46. That Officer Doty asked . . . the defendant to provide two additional breath samples for the Alco-Sensor instrument and she did.

47. That the next two readings on the Alco-Sensor were .11.

These findings are supported by competent evidence in the form of Officer Doty's testimony. Officer Doty testified that defendant failed to stop at the license checkpoint; that she had an odor of alcohol about her, as well as glassy eyes and slurred speech; that she had difficulty performing counting tests and that her Alco-Sensor readings indicated intoxication. Based on these observations, Officer Doty placed defendant under arrest for DWI. Although Officer Doty was not certified to conduct the two counting tests listed above and was also not certified to administer the Alco-Sensor test, defendant did not object to the introduction of this evidence. "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1) (2006). Because no objection was made to the introduction of the counting tests at either the motion to suppress hearing or at trial, the introduction of those tests is beyond the scope of this appeal.

Alco-Sensor test results cannot be used as substantive evidence of impairment, but may be admitted as evidence in support of an officer's determination of probable cause for an arrest. *State v. Bartlett*, 130 N.C. App. 79, 82, 502 S.E.2d 53, 55 (1998). Here, the Alco-Sensor results were admitted during the motion to suppress hearing for the purpose of determining whether Officer Doty had probable cause to arrest defendant. No objection was made when the test results were introduced. Since no objection was made, we need not address the issue of whether an officer must be certified to administer such tests.

We next must determine whether the trial court's findings support a conclusion that Officer Doty had probable cause to arrest defendant for DWI. "[P]robable cause requires only a probability or

substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (citation omitted). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Here, Officer Doty detected an odor of alcohol on a defendant who drove through a checkpoint, displayed an open container of alcohol in the vehicle, exhibited slurred speech and diminished motor skills, and registered as intoxicated on Alco-Sensor tests. These circumstances support a conclusion that Officer Doty had probable cause to arrest defendant for DWI. Accordingly, we find defendant's argument regarding probable cause to be without merit.

*II. Motion to Dismiss*

[2] Defendant next challenges the trial court's denial of her motion to dismiss at the close of the State's case and at the close of all evidence. "When considering a motion to dismiss, 'if the trial court determines that a *reasonable* inference of the defendant's guilt *may* be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence.' " *State v. Alexander*, 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994) (quoting *State v. Smith*, 40 N.C. App. 72, 78-79, 252 S.E.2d 535, 539-40 (1979)). "In addition, it is well settled that the evidence is to be considered in the light most favorable to the State and that the State is entitled to every reasonable inference to be drawn therefrom." *Alexander*, 337 N.C. at 187, 446 S.E.2d at 86.

For a prima facie case of DWI, the State must establish that defendant was operating a motor vehicle while impaired. North Carolina General Statute § 20-138.1 (2005) establishes the procedure the State must follow. That statute reads in relevant part:

§ 20-138.1. Impaired driving

(a) Offense—A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.

In this case, the State presented evidence that defendant was appreciably impaired as judged by her conduct at the checkpoint, and further presented evidence that defendant had registered an Intoxilyzer reading of 0.08 after her arrest. Thus, when viewed in the light most favorable to the State, the evidence could support a reasonable juror's conclusion that defendant could be found guilty under either prong of the DWI statute. Accordingly, defendant's motion to dismiss was properly denied.

### III. State's Expert on Alcohol Elimination Rate

[3] Defendant next argues that the trial court erred in admitting the testimony of Glover, a research scientist and training specialist in forensic testing for the Alcohol Branch of the Department of Health and Human Services. Glover testified using a retrograde extrapolation model that defendant's breath alcohol level was likely .10 at the time she was stopped by the police. Defendant contends that Glover's testimony was irrelevant, immaterial, and inadmissible since it concerned a model using average alcohol elimination rates rather than defendant's actual elimination rate.

"[T]rial courts are afforded 'wide latitude of discretion when making a determination about the admissibility of expert testimony.' " *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (quoting *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984)). "Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686. North Carolina General Statute § 8C-1, Rule 702 (2005) states in relevant part:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

In evaluating the admissibility of expert testimony, North Carolina uses the three-step analysis announced in *State v. Goode*, 341 N.C.

513, 461 S.E.2d 631 (1995). That analysis asks 1) whether the expert's proffered method of proof is sufficiently reliable as an area for expert testimony, *id.*, 341 N.C. at 527-29, 461 S.E.2d at 639-41; 2) whether the witness testifying at trial is qualified as an expert in that area of testimony, *id.*, 341 N.C. at 529, 641 S.E.2d at 640; and 3) whether the expert's testimony is relevant. *Id.*, 341 N.C. at 529, 461 S.E.2d at 641. Defendant on appeal does not challenge Glover's qualifications as an expert, but argues that the substance of his expert testimony was unreliable, irrelevant, and that the unfair prejudice from the testimony's admission substantially outweighed its probative value.

This Court has previously allowed the admission of retrograde extrapolation evidence in DWI cases, even where the testimony concerned an average alcohol elimination rate rather than defendant's actual elimination rate. *State v. Taylor*, 165 N.C. App. 750, 600 S.E.2d 483 (2004); *State v. Catoe*, 78 N.C. App. 167, 336 S.E.2d 691 (1985). In light of the *Howerton* decision, such precedent is crucial in determining whether the expert testimony was properly admitted in the instant case. "Initially, the trial court should look to precedent for guidance in determining whether the theoretical or technical methodology underlying an expert's opinion is reliable." *Howerton*, 358 N.C. at 459, 597 S.E.2d at 687. "[O]nce the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Id.*, 358 N.C. at 461, 597 S.E.2d at 688.

Since this Court has previously recognized that retrograde extrapolation evidence is sufficiently reliable, we conclude that the evidence offered at trial by Glover was sufficiently reliable to meet the first prong of the *Goode* test. We must next consider whether it satisfies the relevancy requirement. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *N.C. Gen. Stat.* § 8C-1, Rule 401 (2005). Here, the average alcohol elimination rate offered by Glover could aid a finder of fact in determining whether it was more or less likely defendant's breath alcohol level exceeded the statutory limit for DWI purposes. Accordingly, the testimony was relevant.

Defendant's final contention is that the prejudicial effect of the testimony substantially outweighed its probative value under *N.C. Gen. Stat.* § 8C-1, Rule 403 (2005). The trial court concluded that

admission of the evidence was not unfairly prejudicial. This determination, like the trial court's determination to admit the expert testimony, will not be disturbed absent a showing of abuse of discretion. Abuse of discretion will only be found where the trial court's conclusion is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Because the evidence was sufficiently reliable and relevant, the expert was qualified, and defendant registered a .08 blood alcohol level when actually tested, we hold that the trial court did not abuse its discretion in admitting the evidence offered by Glover regarding average alcohol elimination rates. This assignment of error is overruled.

### IV. Plain Error

**[4]** Defendant lastly argues that the trial court committed plain error by failing to instruct the jury that it must specify the basis for finding defendant guilty. Specifically, defendant contends the instruction should have included at least one of the two statutory prongs upon which a DWI conviction may rest. "Plain error is an error which was 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Perkins*, 154 N.C. App. 148, 152, 571 S.E.2d 645, 648 (2002) (citations omitted). "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *Perkins*, 154 N.C. App. at 152, 571 S.E.2d at 648 (citations omitted).

Here, as previously discussed, there was abundant evidence for the jury to find defendant guilty under either prong of the DWI statute. In reaching its verdict, the jury could have relied on Officer Doty's testimony and found defendant guilty under the appreciably impaired prong or it could have relied on the Intoxilyzer results and rendered its verdict under the *per se* prong. Therefore, assuming *arguendo* that it was error for the court to fail to instruct the jury to specify which prong it was relying on in finding defendant guilty, defendant cannot show that the jury likely would have reached a different verdict if given such an instruction. This assignment of error is overruled.

**[5]** Defendant has failed to argue her remaining assignments of error on appeal, and we deem them abandoned pursuant to N.C. R. App. P. 28(b)(6) (2006) ("Assignments of error not set out in the appellant's

IN RE H.T.

[180 N.C. App. 611 (2006)]

brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

No error.

Judges GEER and JACKSON concur.