## In re NELLIE BARTLETT CHASE.

(Filed 31 January, 1928.)

**1. States—Relationship—Force of Judgments of Other States—"Full Faith and Credit."**

While under our government the states of the United States retain their individual sovereignties, and without special constitutional or valid legislative provisions to the contrary the judgments of each State are to be regarded in the courts of every other State as foreign judgments having no extra-territorial effect, except, that as modified by the Federal Consti-

tution, they shall be given full faith and credit as to their judicial proceedings, etc., and as modified by Congress under the power to prescribe by general laws the manner in which they be proved and the effect thereof.

**2. Same.**

By the Federal Constitution with the statutory provisions relating thereto the judgments of the courts in each State are given the same conclusive effect, as records, in all the states as they had at home, and though it does not make them domestic judgments in the other states, to all intents and purposes, it does give them general validity, faith and credit as evidence in the courts.

**3. Guardian and Ward—Foreign and Ancillary Guardianship.**

Where under proceedings duly had in another State under an inquisition for lunacy, a person has been declared insane and a guardian of his person and property has been therein had, and in the exercise of the authority thus derived, the guardian has had his ward confined in an asylum in this State as being best suited to the cure and well being of his ward: *Held*, our courts in recognition of the Federal comity laws may, as a matter of comity, uphold here the relationship of guardian and ward, and the exercise of the guardian's reasonable judgment in confining his ward in the private institution of our State, there being nothing contrary to our public policy, good morals or natural justice or against our statute or organic law in so doing.

**4. Insane Persons—Guardianship—Rights of Foreign Guardians in This State.**

The proceedings in another State declaring a person insane is a determination of status, and when such proceeding is according to the law of the other State, the status, as declared, will usually be upheld in this State, as a matter of general recognition.

APPEAL by Charles W. Bartlett, guardian of Nellie Bartlett Chase, from *Shaw, J.*, at June Term, 1927, of BUNCOMBE. Reversed in part.

The cause was brought to this Court at the Spring Term of 1927 by *certiorari* to review a judgment which denied Mrs. Chase's petition for her discharge from a hospital in Asheville on a writ of *habeas corpus.* 193 N. C., 450. The facts with regard to her detention appear in the record of that proceeding. In May, 1926, in an inquisition of lunacy instituted in the county judge's court of Dade County, Florida, it was judicially determined that Mrs. Chase was insane; that she was not indigent, and that she should be delivered to the care and custody of her brother, Charles W. Bartlett, "to be admitted to a private hospital for care, maintenance and treatment." Charles W. Bartlett was duly appointed by the same court guardian of her person and of her estate. He brought his ward to North Carolina and put her in a private hospital in Asheville for treatment. Thereafter a writ of *habeas corpus* was sued out on her behalf, and at the hearing, in addition to the foregoing facts, it was found that she could not be discharged and allowed her liberty

Without endangering her own safety and the safety of others. After the argument here, the cause was remanded for the purpose of obtaining a definite adjudication of the question whether the petitioner was unlawfully restrained of her liberty. It was said in the opinion that if it should be adjudged that her confinement is unlawful and that she is insane a temporary order might secure her safety pending further proceedings.

The cause was afterwards heard before Judge Shaw, and upon full investigation he adjudged that the petitioner is insane and should be restrained; that the proceedings in the county judge's court of Dade County, Florida, were legal and entitled to full faith and credit in that State so far as the adjudication of insanity and the appointment of the guardian were concerned, but that the guardian was without authority to have custody of his ward in this State or to commit her to a hospital here for treatment; and that she be discharged from the custody of her guardian, but should be detained in the Appalachian Hall in Asheville pending further orders of the court. The guardian excepted and appealed.

*Wells, Blackstock & Taylor and Joseph W. Little for petitioner.*
*Mark W. Brown for guardian, appellant.*

ADAMS, J. In *Buckner v. Finley,* 2 Peters, 586, 7 Law Ed., 528, it is said: "For all national purposes embraced by the Federal Constitution, the states and the citizens thereof are one, united under the same sovereign authority, and governed by the same laws. In other respects the states are necessarily foreign to and independent of each other. Their constitutions and forms of government being, although republican, altogether different, as are their laws and institutions." Although forming a confederated government the states retain their individual sovereignties, and without special constitutional or legislative provision the judgments of each State would be regarded in the courts of every other State as foreign judgments. It was upon this theory and in strict accord with it that provision was made for giving in the courts of each State full faith and credit to the public acts, records, and judicial proceedings of every other State and authorizing the Congress to prescribe by general laws the manner in which such acts, records, and proceedings shall be proved, and the effect thereof. Fed. Const., Art. IV, sec. 1. The statute prescribing the mode in which the records and judicial proceedings of the courts of any State shall be proved provides that the records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken. R. S.,

10—195

sec. 905; U. S. Compiled Sts., sec. 1519. That is, this act, in connection with the constitutional provision, gives to the judgments of each State the same conclusive effect, as records, in all the States as they had at home; it does not make the judgments of other States domestic judgments to all intents and purposes, but it gives them general validity, faith and credit as evidence in the courts. *Mills v. Durgee,* 7 Cranch, 481, 3 Law Ed., 411; *Thompson v. Whitman,* 18 Wallace, 457; 21 Law Ed., 897; Story's Conflict of Laws, sec. 609; Cooley's Principles Const. Law, 185. But the record is conclusive evidence only of the matter adjudged. "It must be obvious, when the Constitution declared that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, and provides that Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof, that the latter clause, as it relates to judgments, was intended to provide the means of giving to them the conclusiveness of judgments upon the merits, when it is sought to carry them into judgments by suits in the tribunals of another State. . . . The judgment does not carry with it into another State the efficacy of a judgment upon property or persons, to be enforced by execution." *M'Elmoyle v. Cohen,* 13 Peters, 312, 324, 10 Law Ed., 177, 183.

In view of this principle it should be observed that by suing out the writ of *habeas corpus* the petitioner did not seek to enforce the judgment given by the court in Florida, in the sense of carrying it into a judgment in this State. Nor did she assail it as being ineffective in the domestic jurisdiction. The basis of her petition is the alleged unlawful restraint of her person in North Carolina under a judgment which was rendered in another State and which, she contends, has no extra-territorial force. With exceptions due to clauses in the Federal Constitution each of the States is regarded as a legal unit; but under the provision that "the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States" (Art. IV, sec. 2), the petitioner had the right to contest the legality of her detention by the writ of *habeas corpus.* Cooley's Principles Const. Law, 187.

The procedure in Florida determined the petitioner's status, and status is usually a matter of general recognition. The condition of her mind was ascertained by the method prescribed in the first volume of the Florida Compiled Laws Annotated. Sec. 1200 sets forth the requisites of the petition; sec. 1201, the duty of the judge, and of the examining committee who, before proceeding, must secure the presence of the supposed insane person, and thereafter make a report; and sec. 1203, the duty of the court after due consideration of the report made by the examining committee. If the person is found to be insane the court

shall so adjudge or decree. The clause providing that such person shall be delivered to the Florida Hospital for the Indigent Insane is qualified by the provision that if any responsible person offer to assume the care and custody of a harmless person without cost to the State or county the court, in its discretion, may make an order to this effect. It was accordingly decreed that Mrs. Chase should be delivered to the care and custody of her brother, Charles W. Bartlett, to be admitted to a private hospital for care, maintenance and treatment. She was thereupon carried to Asheville and admitted into a private hospital.

The position of the guardian is, not that he has attempted to change the domicile of his ward, but has sought the best available agency for effecting her cure, and that the decree of the Florida court, if without extra-territorial effect, should be upheld under the doctrine of comity between the States.

It is important to recall the fact that the respondent is the petitioner's only guardian; the rights of opposing guardians, resident and foreign, are therefore not involved. And it may be granted that as a rule the authority of the respondent will be regarded as limited to the State in which he was appointed guardian. *Pennoyer v. Neff,* 95 U. S., 714, 24 Law Ed., 565; *Hoyt v. Sprague,* 103 U. S., 613, 631, 26 Law Ed., 585, 592; *Morgan v. Potter,* 157 U. S., 195, 39 Law Ed., 670. Ordinarily a guardian cannot, as the assertion of a legal right, transfer the power to control the person of his ward beyond the limits of the sovereignty from which his authority was derived; still there is a sense in which the power conferred by his appointment may follow the petitioner's person. *Townsend v. Kendall,* 4 Minn., 77 A. D., 534. While the appointment by the Florida court cannot *ex proprio vigore* have any extra-territorial force or operation, effect may be given it by way of comity. The guiding principle is stated in the words of *Chief Justice Bigelow:* "It is the duty of the courts of this State, in the exercise of that comity which recognizes the laws of other States when they are consistent with and in harmony with our own, to consider the status of guardian which the petitioner holds under the laws of another State as an important element in determining with whom the custody of the child is to continue. It would not do to say that a foreign guardian has no claim to the care or control of the person of his ward in this commonwealth. If such were the rule, a child domiciled out of the State, who was sent hither for purposes of education, or came within the State by stealth, or was brought here by force or fraud, might be emancipated from the control of his rightful guardian, duly appointed in the place of his domicil, and thus escape or be taken out of all legitimate care and custody. But in such cases the foreign guardian would not be regarded here as a stranger or intruder. His appointment in another State as guardian of an infant,

with powers and duties similar to those which are by our laws vested in guardians over the persons of their wards, would entitle him to ask that the comity of friendly states having similar laws and usages should be so far recognized and exerted as to surrender to him the infant, so that he might be again restored to his full rights and powers over him, by removing him to the place of his domicil. And if it should appear that such surrender and restoration would not debar the infant from any personal rights or privileges to which he might be entitled under our laws, and would be conducive to his welfare and promote his interests, it would be the duty of the court to award to the foreign guardian the custody of the person." *Woodworth v. Spring,* 86 Mass., 321.

While comity is a rule of practice and not a rule of law, it has substantial value in securing uniformity of decision; it does not command, but it persuades; it does not declare how a case shall be decided, but how with propriety it may be decided. It is more than mere deference to the opinion of another, for by virtue of the doctrine rights acquired under a statute enacted or a judgment rendered in one State will be given force and effect in another, if not against public policy; and as pointed out in *R. R. v. Babcock,* 154 U. S., 190, 38 Law Ed., 958, to justify a court in refusing to enforce a right which accrued under the law of another State, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens. 11 C. J., 1236; *Emory v. Greenough,* 3 Dall., 369, 1 Law Ed., 640; *Bank v. Donnally,* 8 Peters, 361, 8 Law Ed., 974; *The China v. Walsh,* 7 Wall., 53, 19 Law Ed., 67. And this is a matter which each State must decide for itself. *Finney v. Guy,* 189 U. S., 335, 47 Law Ed., 839.

We find nothing in our own laws which declares it against public policy, good morals, or natural justice to recognize as a matter of comity the judgment given in the Florida Court, on which the petitioner was admitted into a private hospital in this State for cure, maintenance, and treatment. If a court of chancery may assist a guardian in compelling his ward to go to a school outside his State (2 Story's Eq. Jur., sec. 1340; *Townsend v. Kendall, supra; Woodworth v. Spring, supra),* why may it not as a matter of comity give countenance and approval to the admittance of an insane ward into a private hospital outside his State? The petitioner is yet insane. On the former hearing Judge Schenck found as a fact that the respondent is the petitioner's only close relative, and that he has acted for the best interest of the petitioner in causing her to be confined for treatment; and it is said in the appellant's brief that Judge Shaw expressed the same opinion. At any rate, there is no finding that he is not fit and suitable for the position of guardian.

As we understand, Judge Shaw discharged the petitioner on the ground that the judgment of the Florida court, of itself, has no operation outside the limits of that State. If this proposition of law be granted, it does not operate to prevent the application of the doctrine of comity, upon which our decision is made to rest.

So much of the judgment as declares that the respondent is without authority as guardian to have the custody of the petitioner in North Carolina or to commit her to a private hospital herein, and that she be discharged from his custody as guardian, is reversed, and the relation heretofore existing between the respondent and the petitioner as guardian and ward is restored. In other respects the judgment is affirmed.

Reversed in part.