## COX v. ROACH

[218 N.C. App. 311 (2012)]

KRISTA DAWN COX et al., Plaintiffs v. DAVID ROACH et al., Defendants

No. COA11-905

(Filed 7 February 2012)

**1. Immunity—sovereign—Virginia—comity—encouraged in North Carolina—no evidence of consent to suit**

The trial court did not err in allowing defendant University of Virginia's (UVA) motion to dismiss a false arrest, false imprisonment, battery, malicious prosecution, violation of the North Carolina Constitution, conversion, and conspiracy case on the ground of sovereign immunity. Virginia's extension of sovereign immunity to UVA is in line with North Carolina's public policy, comity is encouraged in North Carolina as long as extending comity to a particular situation would not be against public policy, and plaintiffs did not contend nor was there any evidence that defendant UVA consented to the suit.

**2. Pretrial Proceedings—motion for continuance denied—no abuse of discretion**

The trial court did not abuse its discretion in a false arrest, false imprisonment, battery, malicious prosecution, violation of the North Carolina Constitution, conversion, and conspiracy case by denying plaintiffs' motions for continuance of summary judgment motion in order to complete necessary discovery. Plaintiffs failed to state a valid reason for the necessity of a continuance after approximately ten months of litigation, and plaintiffs did not direct the Court of Appeals' attention to any evidence which forecasted prejudice they may have suffered due to the failure of the trial court to allow a continuance.

**3. False arrest—false imprisonment—probable cause—bond summary judgment proper**

The trial court did not err in a false arrest, false imprisonment, battery, malicious prosecution, violation of the North Carolina Constitution, conversion, and conspiracy case by granting summary judgment in favor of defendants Roach, Adkins, Schatzman, and Hartford. Roach, Adkins, and Schatzman acted with probable cause in determining there was a probability or substantial chance of criminal activity and on such a basis obtaining and acting on the search and arrest warrants. Thus, the claim against Hartford for a bond based upon defendants unfaithful performance and violation of their duties necessarily failed.

COX v. ROACH

[218 N.C. App. 311 (2012)]

Appeal by plaintiffs from orders entered 17 December 2010 by Judge R. Stuart Albright and 25 April 2011 by Judge Judson D. DeRamus, Jr. in Superior Court, Forsyth County. Heard in the Court of Appeals 14 December 2011.

*Smith, James, Rowlett & Cohen, LLP, by Norman B. Smith, for plaintiffs-appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James C. Adams, II, John S. Buford, and Clint S. Morse, for defendants-appellees David Roach and The Rector & Visitors of the University of Virginia.*

*The Forsyth County Attorney's Office, by Kevin J. McGuckin, for defendant-appellees Joe William Adkins, Jr., William T. Schatzman and the Hartford Fire Insurance Company.*

STROUD, Judge.

Plaintiffs appeal trial court orders allowing a motion to dismiss and granting a summary judgment motion in favor of defendants which resulted in the dismissal of all of plaintiffs' claims. For the following reasons, we affirm.

## I. Background

On 9 and 11 June 2010, plaintiff filed two complaints with different file numbers against defendants[1] bringing causes of action for false arrest, false imprisonment, battery, malicious prosecution, violation of the North Carolina Constitution, conversion, conspiracy, and recovery under the sheriff's bond. On or about 8 July 2010, defendants Joe Williams Adkins, Jr. ("Adkins") and William T. Schatzman ("Schatzman") answered plaintiffs' complaint and substantially denied the material allegations therein; defendants Adkins and Schatzman also raised various defenses. On or about 20 August 2010, defendant Travelers answered plaintiffs' complaint and also alleged various defenses. On 25 October 2010, Hartford Fire Insurance Company ("Hartford") was substituted for defendant Travelers. On or about 29 October 2010, defendant David Roach ("Roach") answered plaintiffs' complaint by substantially denying the material allegations; defendant Roach also asserted various defenses and made a motion to dismiss. Also on or about 29 October 2010, defendant The Rector

---

1. At the time of the filing of the 9 and 11 June 2010 complaints, defendants included Travelers Insurance Company ("Travelers"); however, defendant Hartford Fire Insurance Company was later substituted for Travelers.

and Visitors of the University of Virginia ("UVA") made a motion to dismiss alleging several defenses, including sovereign immunity.

On 22 November 2010, plaintiff filed a "MOTION TO SUBSTITUTE AMENDED COMPLAINT FOR ORIGINAL COMPLAINT[.]" The amended complaint alleged:

10. A principal business of plaintiff is to recover x-ray films from hospital radiology departments which are being discarded, to remove and shred all papers containing patient identification and medical information, to process and dissolve the film with heated chemicals, and remove therefrom silver, which this plaintiff sells. Over the years plaintiff Chesapeake Microfilm, Inc., has provided these services for hundreds of hospitals.

11. At all times material hereto, plaintiffs Krista Dawn Cox and Joshua Scott Wallace were employees of plaintiff Chesapeake Microfilm, Inc.

. . . .

13. On or about June 1, 2007, plaintiff Krista Dawn Cox called defendant University of Virginia's radiology department and asked if there were any radiological film to be discarded. An agent and employee of defendant University of Virginia, then and there acting within the course and scope of his authority, told Krista Dawn Cox that defendant University of Virginia had 32 drums of radiological film that was being discarded and needed to be picked up. Arrangements were made between plaintiff Krista Dawn Cox and this employee of defendant University of Virginia for the film to be picked up on June 2, 2007.

14. On June 2, 2007, pursuant to the above arrangements, plaintiff Joshua Scott Wallace, driving a truck belonging to plaintiff Chesapeake Microfilm, Inc., went to the radiology department of defendant University of Virginia in Charlottesville, Virginia; with the assistance of employees of defendant University of Virginia, who were then and there acting within the course and scope of their agency and authority, picked up the 32 barrels of radiological film, which defendant University of Virginia desired to discard; and transported that film back to the place of business of plaintiff Chesapeake Microfilm, Inc., in Forsyth County, North Carolina.

15. Soon after the radiological film from defendant University of Virginia arrived at the place of business of plaintiff Chesapeake Microfilm, Inc., employees of this plaintiff shredded and destroyed

the paper film jackets and all other paper accompanying the film bearing any identifying information of patients or medical information of any type.

. . . .

17. On June 13, 2007, defendants David Roach and the University of Virginia, knowing that plaintiffs had been acting lawfully in all respects and had not violated the laws of any jurisdiction, caused to be issued a felony warrant of arrest for plaintiff Joshua Scott Wallace, charging him with theft in violation of Article 18.2-95 of the Code of Virginia.

18. On June 26, 2007, defendants David Roach and the University of Virginia, knowing that plaintiffs had been acting lawfully in all respects and had not violated the laws of any jurisdiction, caused to be issued a felony warrant of arrest for plaintiff Krista Dawn Cox, charging her with theft in violation of Article 18.2-95 of the Code of Virginia.

19. Defendant David Roach came to Forsyth County, North Carolina, and obtained the assistance and participation of defendants Joe William Adkins, Jr., and William T. Schatzman in arresting plaintiff Joshua Scott Wallace, causing him to be placed in the Forsyth County jail, causing him to be transported to Charlottesville, Virginia, causing him to be placed in a jail in Charlottesville, Virginia, and causing him to be brought to the criminal court of the Commonwealth of Virginia.

20. Defendant David Roach came to Forsyth County, North Carolina, and obtained the assistance and participation of defendants Joe William Adkins, Jr., and William T. Schatzman in arresting plaintiff Krista Dawn Cox, causing her to be placed in the Forsyth County jail, requiring her to drive to Charlottesville, Virginia, causing her to be placed in a jail in Charlottesville, Virginia, and causing her to be brought to the criminal court of the Commonwealth of Virginia.

21. Incidental to the arrest of plaintiff Joshua Scott Wallace, defendants acting in concert and cooperation, arranged for the seizure, and carried out the seizure, of silver owned by plaintiff Chesapeake Microfilm, Inc., from the safe at its place of business with a value of approximately $15,000, approximately 30,000 pounds of radiological film owned by plaintiff Chesapeake Microfilm, Inc., at its place of business with a value of approxi-

COX v. ROACH

[218 N.C. App. 311 (2012)]

mately $30,000, a panel truck owned by plaintiff Chesapeake Microfilm, Inc., with a value of approximately $25,000, and silver owned by plaintiff Chesapeake Microfilm, Inc., at the premises controlled by it in Knoxville, Tennessee, with a value of approximately $300,000.

22. Plainly no crime whatever had been committed by plaintiffs or anyone else in connection with the radiological film which defendant University of Virginia was discarding. In the course of making the arrests and the seizures, additional information came to the attention of defendants, which made it even more clear, definite, and certain, that no crime had been committed, or could have been committed. Nevertheless, in the complete absence of probable cause that any criminal activity had taken place, defendants in concert and participation proceeded in the manner described above. Defendants displayed malicious motivations in various ways, including discussing how the forfeitures of the money and property would be split between the law enforcement agencies, trying to coerce a guilty plea from Ronnie W. Cox, the chief executive officer of plaintiff Chesapeake Microfilm, Inc., (even though he had not been and never was charged with any crime), threatening plaintiff Krista Dawn Cox that her father Ronnie W. Cox would be put in prison for the rest of his life if she did not cooperate, timing the arrest of Krista Dawn Cox for a Friday evening to insure that she could not get out of jail until the following Monday, causing false testimony to be given at probable cause hearing in criminal court in Charlottesville, Virginia, and threatening to have additional criminal charges brought against plaintiffs Joshua Scott Wallace and Krista Dawn Cox directly to the grand jury in Charlottesville, Virginia.

23. Plaintiff Joshua Scott Wallace was acquitted for all charges in the circuit court of the city of Charlottesville, Virginia, on July 16, 2008.

24. The charges against Krista Dawn Cox did not come to trial, but defendants have agreed to the entry of an order in the Superior Court of Forsyth County, North Carolina, that no crime was committed in the state of North Carolina, and for the expunction of all of the criminal records of plaintiffs Krista Dawn Cox and Joshua Scott Wallace in the Commonwealth of Virginia.

25. Defendants agreed to, and eventually did, return all of the property of Chesapeake Microfilm, Inc., that had been seized.

26. Defendants made contact with other hospital radiology departments from which plaintiff Chesapeake Microfilm, Inc., picked up radiological film to be discarded on a regular basis. Defendant told these hospitals that the plaintiffs had been engaged in criminal conduct in picking up the radiological film. Directly and proximately as a result of these contacts by defendants, plaintiff Chesapeake Microfilm, Inc., lost one of its most valuable sources for radiological film to be discarded, causing this plaintiff to lose net profit in the amount of approximately $250,000 per year.

Plaintiffs brought causes of action for false arrest, false imprisonment, battery, and malicious prosecution, on behalf of Joshua Scott Wallace ("Wallace") and Krista Dawn Cox ("Cox"); conversion on behalf of Chesapeake Microfilm, Inc. ("Chesapeake"); and conspiracy, gross negligence, and recovery under the sheriff's bond on behalf of all plaintiffs. On 29 November 2010, the trial court consolidated the two cases which were a result of the two complaints originally filed under different file numbers, into one. On or about 14 December 2010, the trial court granted plaintiffs' motion to substitute complaints.

On 17 December 2010, the trial court allowed UVA's motion to dismiss based upon sovereign immunity. On or about 21 December 2010, defendant Hartford answered plaintiffs' complaint and raised various defenses. On or about 13 January 2011, defendant Roach answered plaintiffs' amended complaint again substantially denying the material allegations of plaintiffs' complaint and asserting various defenses.

On or about 10 March 2011, defendant Roach made a motion for summary judgment "based on the existence of probable cause." On or about 18 March 2011, defendants Adkins, Schatzman, and Hartford made a motion for summary judgment "based upon the existence of probable cause, public officer's immunity, [and] qualified immunity[.]" Thus, all defendants remaining in the case filed a motion for summary judgment. Plaintiffs made a "MOTION FOR CONTINUANCE OF SUMMARY JUDGMENT HEARING IN ORDER TO OBTAIN EVIDENTIARY MATERIALS PURSUANT TO RULE 56(f) OF THE RULES OF CIVIL PROCEDURE" ("Rule 56(f) motion"). On 25 April 2011, the trial court denied plaintiffs' Rule 56(f) motion and granted defendants' motions for summary judgment. The trial court then dismissed plaintiffs' case with prejudice. Plaintiffs appeal both the 17 December 2010 order allowing defendant UVA's motion to dismiss and the 25 April 2011 order denying plaintiffs' Rule 56(f) motion and granting the remaining defendants' summary judgment motions.

II. Motion to Dismiss

[1] Plaintiffs first contend that the trial court erred in allowing defendant UVA's motion to dismiss on the ground of sovereign immunity.

> Rule 12(b)(1) of the Rules of Civil Procedure allows for dismissal based upon a trial court's lack of jurisdiction over the subject matter of the claim. Our Court has held that the defense of sovereign immunity is a Rule 12(b)(1) jurisdiction defense. The standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo*. The standard of review on a motion to dismiss under Rule 12(b)(6) is whether, if all the plaintiff[s'] allegations are taken as true, the plaintiff[s are] entitled to recover under some legal theory.

*Welch Contr'g, Inc. v. N.C. Dep't. of Transp.*, 175 N.C. App. 45, 50, 622 S.E.2d 691, 694 (2005) (citations, quotation marks, and brackets omitted).

Sovereign immunity is "[a] government's immunity from being sued in its own courts without its consent." Black's Law Dictionary 818 (9th ed. 2009); *see also Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008) ("Sovereign immunity protects the State and its agencies from suit absent waiver or consent." (citation and quotation marks omitted)), *disc. review and cert. denied*, 363 N.C. 123, 672 S.E.2d 684 (2009); *DiGiacinto v. Rector and Visitors of GMU*, 704 S.E.2d 365, 370 (Va. 2011) ("Sovereign immunity is an established principle of sovereignty that a sovereign State cannot be sued in its own courts without its consent and permission." (citation, quotation marks, ellipses, and brackets omitted)).

The Supreme Court of Virginia has stated, "As an agency of the Commonwealth, UVA is entitled to sovereign immunity under the common law absent an express constitutional or statutory provision to the contrary. There is no such waiver in the Act or elsewhere."[2] *The Rector And Visitors v. Carter*, 591 S.E.2d 76, 78 (Va. 2004). Indeed, plaintiffs concede in their brief that "under Virginia law, the University of Virginia would be shielded by sovereign immunity for the acts it and its agents committed within its own jurisdiction[.]" Therefore, the question before us as presented by plaintiffs is

> whether or not the sovereign immunity that applies to the University of Virginia within the confines of that state, spreads to

2. The "Act" refers to the Virginia Tort Claims Act. *See The Rector And Visitors v. Carter*, 591 S.E.2d 76, 77 (Va. 2004).

its wrongful conduct outside its own territory and within the boundaries of another sovereign state, the state of North Carolina, when it has been hailed before the courts of that state.

In *Nevada v. Hall*, the Supreme Court concluded that though states were welcome to recognize the sovereign immunity of one another, they were not required to do so. 440 U.S. 410, 59 L.Ed. 2d 416 (1979). *Hall* was later summarized by the Court in *Alden v. Maine*:

> In *Hall* we considered whether California could subject Nevada to suit in California's courts and determined the Constitution did not bar it from doing so. We noted that the doctrine of sovereign immunity is an amalgam of two quite different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign. We acknowledged that the immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that immunity, that the notion that immunity from suit is an attribute of sovereignty is reflected in our cases, and that this explanation adequately supports the conclusion that no sovereign may be sued in its own courts without its consent. We sharply distinguished, however, a sovereign's immunity from suit in the courts of another sovereign:

> > But this explanation affords no support for a claim of immunity in another sovereign's courts. Such a claim necessarily implicates the power and authority of a second sovereign; its source must be found either in an agreement, express or implied, between the two sovereigns, or in the voluntary decision of the second to respect the dignity of the first as a matter of comity.

> Since we determined the Constitution did not reflect an agreement between the States to respect the sovereign immunity of one another, California was free to determine whether it would respect Nevada's sovereignty as a matter of comity.

527 U.S. 706, 738, 144 L.Ed. 2d 636, 668 (1999) (citations, quotation marks, and brackets omitted). Therefore, though North Carolina courts are not required to respect Virginia's claim of sovereign immunity, they may do so "as a matter of comity." *Id.*

**COX v. ROACH**

[218 N.C. App. 311 (2012)]

As to comity, our Supreme Court has stated,

> While comity is a rule of practice and not a rule of law, it has substantial value in securing uniformity of decision; it does not command, but it persuades; it does not declare how a case shall be decided, but how with propriety it may be decided. It is more than mere deference to the opinion of another, for by virtue of the doctrine rights acquired under a statute enacted or a judgment rendered in one State will be given force and effect in another, if not against public policy; and, as pointed out in *R. R. v. Babcock*, 154 U.S., 190, 38 Law Ed., 958, to justify a court in refusing to enforce a right which accrued under the law of another State, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens. And this is a matter which each State must decide for itself.

*In re Chase*, 195 N.C. 143, 148, 141 S.E. 471, 473 (citations omitted), *cert denied*, 278 U.S. 600, 73 L.Ed. 529 (1928); *see Cannaday v. Atlantic Coast Line R. Co.*, 55 S.E. 836, 838 (N.C. 1906) ("[T]he rule of comity is not a right of any state or country, but is permitted and accepted by all civilized communities from mutual interest and convenience, and from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return.") Accordingly, comity is encouraged in North Carolina as long as extending comity to a particular situation would not be against public policy. *See Chase*, 195 N.C. at 148, 141 S.E. at 473. Furthermore,

> the mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to the public policy of the forum. To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor.

*Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 857-58 (1988) (citations omitted).

As North Carolina extends sovereign immunity to its own public universities, we conclude that Virginia's extension of sovereign

immunity to UVA is in line with North Carolina's public policy. *See, e.g., Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) ("The University [of North Carolina at Chapel Hill] is a state agency to which the doctrine of sovereign immunity applies. Therefore, unless the University consented to suit or waived its immunity regarding these claims, the claims are barred." (citations omitted)). Furthermore, although plaintiffs cite *Corum v. Univ. of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992) to support the proposition that "sovereign immunity would have been no bar" to their claims in North Carolina, we find Corum to be inapplicable as it was based upon claims under the North Carolina Constitution, and plaintiffs have not raised constitutional claims in this case.[3] *See id.* at 785-86, 413 S.E.2d at 291-92. ("The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their *rights guaranteed by the Declaration of Rights.* . . . [W]e hold that plaintiff does have a direct cause of action *under the State Constitution* for alleged violations of his freedom of speech rights, guaranteed by Article I, Section 14." (emphasis added)), *cert. denied*, 506 U.S. 985, 121 L.Ed. 2d 431 (1992). Accordingly, we choose to exercise comity as to defendant UVA's claim of sovereign immunity. As plaintiffs do not contend nor is there any evidence that defendant UVA consented to this suit, the trial court did not err in allowing defendant UVA's motion to dismiss, as plaintiffs are barred from recovering against defendant UVA due to sovereign immunity. *See generally Carl*, 192 N.C. App. at 550, 665 S.E.2d at 793.[4] As such, this argument is overruled.

### III. Motion for Continuance

[2] Plaintiffs next contend that "the Superior Court abused its discretion in denying plaintiffs' motions for continuance of summary judgment motion in order to complete necessary discovery." (Original

---

3. Plaintiffs' 9 June and 11 June 2010 complaints both had causes of action for violations of the North Carolina Constitution. However, plaintiffs dropped these claims in their amended complaint. Plaintiffs acknowledge that they dropped their constitutional claims as they state in their brief that "[t]he amended complaint . . . eliminated claims for violation of the state constitution."

4. We note that plaintiffs' argument regarding the 17 December 2010 order allowing defendant UVA's motion to dismiss heavily focused on the actions of defendant Roach as an employee of defendant UVA. However, defendant Roach was not a party to the motion to dismiss but was instead dismissed from the case due to his own summary judgment motion; therefore, we will consider all arguments regarding defendant Roach when we address plaintiffs' arguments regarding the 25 April 2011 summary judgment order.

in all caps.) "A trial court is not barred in every case from granting summary judgment before discovery is completed. Further, the decision to grant or deny a continuance is solely within the discretion of the trial judge and will be reversed only when there is a manifest abuse of discretion." *Young v. Fun Services-Carolina, Inc.*, 122 N.C. App. 157, 162-63, 468 S.E.2d 260, 264 (citations and quotation marks omitted), *disc. review denied*, 344 N.C. 444, 476 S.E.2d 134 (1996). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *Stovall v. Stovall*, ___ N.C. App. ___, ___, 698 S.E.2d 680, 683 (2010) (citation and quotation marks omitted). Plaintiffs' argument focuses on the lack of harm that would have been created if their motion had been granted; this is irrelevant. The fact that the trial court may have allowed plaintiffs' motion without abusing its discretion does not mean that the trial court must have abused its discretion by not allowing the motion. Furthermore, plaintiffs fail to state a valid reason for the necessity of a continuance after approximately ten months of litigation, and plaintiffs do not direct this Court's attention to any evidence which forecasts prejudice they may have suffered due to the failure of the trial court to allow a continuance; accordingly, we do not conclude that the trial court abused its discretion. *See Young*, 122 N.C. App. at 162-63, 468 S.E.2d at 263-64 (determining that the trial court had not erred in granting a summary judgment motion simply "because discovery was incomplete": "Plaintiffs filed their complaint on 18 April 1994. Summary judgment was granted in a judgment filed 16 March 1995, fully eleven months later. There is no evidence in the record that the trial judge abused her discretion in granting the motion for summary judgment, and we hold that she did not.")

IV. Motion for Summary Judgment

[3] Lastly, plaintiffs contend the trial court erred in granting summary judgment in favor of defendants Roach, Adkins, Schatzman, and Hartford.

> We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Arrington v. Martinez*, ___ N.C. App. ___, ___, 716 S.E.2d 410, 414 (2011) (citations, quotation marks, and brackets omitted). Plaintiffs

argue that defendants Roach, Adkins, and Schatzman acted without probable cause.

> Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances strong in themselves to warrant a cautious man in believing the accused to be guilty. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

*State v. Teate*, 180 N.C. App. 601, 606-07, 638 S.E.2d 29, 33 (2006) (citations, quotation marks, and brackets omitted). As to search warrants, it has been said that "[t]he existence of probable cause is a commonsense, practical question that should be answered using a totality-of-the-circumstances approach. Probable cause is a flexible, common-sense standard. It does not demand any showing that such a belief be correct or more likely true than false." *State v. McKinney*, 361 N.C. 53, 62, 637 S.E.2d 868, 874-75 (2006) (citations and quotation marks omitted). Virginia law is in accord with North Carolina law as it has determined that as to arrests

> probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
>
> The determination of probable cause by police officers depends upon practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act[.]

*West v. Com.*, 678 S.E.2d 836, 840 (Va. Ct. App. 2009) (citation and quotation marks omitted) and as to search warrants

> [p]robable cause, as the very name implies, deals with probabilities. These are not technical; they are factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act. Probable cause exists where the totality of the circumstances set forth in the affidavit supports a common sense decision by the magistrate that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Probable cause is a

fluid concept--turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules. Because it is a fluid concept based on probabilities, the continued existence of probable cause at a particular time is dependent upon the circumstances. So long as probable cause continues to exist, the search will be valid.

*Maye v. Com.*, 605 S.E.2d 353, 362 (Va. Ct. App. 2004) (citations, quotation marks, and brackets omitted).

A.  Defendant Roach

As to defendant Roach, plaintiffs contend that he "knew, or recklessly failed to realize, that he was presenting false and misleading information to the magistrates and judges" in obtaining warrants. Plaintiffs direct this Court's attention to *Franks v. Delaware*, 438 U.S. 154, 57 L.E. 2d 667 (1978) arguing *Franks*

and its progeny make it plain that, as a constitutional matter, officers cannot be insulated from inquiry into the truthfulness [of] their affidavits and testimony supporting warrants. The court held that where a substantial preliminary showing is made that a false statement was knowingly or recklessly made and is included in the affidavit or testimony to support the warrant, and if that statement is necessary to a finding of probable cause, the subject of the warrant is entitled to a hearing to challenge the truthfulness of the factual statements.

In *Franks*, the Supreme Court actually stated,

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted

today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-72, 57 L.E. 2d at 682 (footnote omitted). We thus turn to plaintiffs' "offer of proof" showing "deliberate falsehood or . . . reckless disregard for the truth" on behalf of defendant Roach. *Id.* at 171, 57 L.E. 2d at 682.

Plaintiffs' first piece of self-proclaimed "ample evidence" is that defendant Roach informed the court "that plaintiff . . . Wallace had given false identification, handing the security guard a business card and telling him he was from a company located in Roanoke." However," in truth, as is evidenced by a video recording, plaintiff Wallace handed nothing to the security guard and "indeed plaintiff Wallace's hands were in his pockets the entire time of the discussion." Plaintiffs fail to direct our attention to any evidence in the record, such as an affidavit or the alleged videotape, which would substantiate their assertions. Plaintiffs have thus failed to provide an "offer of proof." *Id.* Furthermore, even if such evidence were before us, we do not find it to be the sort of evidence which would eviscerate probable cause on behalf of defendant Roach; rather, this would be evidence that the security guard either mistakenly remembered his interaction with plaintiff Wallace or at worst, fabricated it; in either case it does not implicate defendant Roach.

Second, plaintiffs argue that "[w]hen defendant Roach was shown the tape and saw that no card had been handed by Mr. Wallace to the security guard, defendant Roach said, 'I guess he lied, too.' " Plaintiff's evidence here is based upon the deposition of Ronnie Cox ("Mr. Cox"), president of Chesapeake, wherein Mr. Cox admits he was not present for the statement by defendant Roach but was informed of it by another individual. Accordingly, such evidence is hearsay, and is not properly considered during a summary judgment hearing or by this Court. *See Rankin v. Food Lion,* ___ N.C. App. ___, ___, 706 S.E.2d 310, 315 (2011) (considering a summary judgment motion before the trial court and stating "hearsay [is] a statement, other than

one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and determining that documents containing hearsay were "inadmissible at trial and were properly ignored by the trial court" and thus "[i]n view of the inadmissibility of the documents upon which Plaintiff relies, we need not address Plaintiff's arguments concerning their legal significance" (quotation marks omitted)).

Third,

> [p]laintiff Wallace left about 20 empty barrels at the University of Virginia Medical Center, when he picked up the full barrels of film. Later, defendant Roach and his colleagues listed the empty barrels as evidence which link plaintiffs to the alleged "crime scene." It is entirely inconsistent with criminal behavior for plaintiff Wallace to have left behind empty containers that could have been traced to his place of work.

Though we could list *ad nauseam* the numerous cases in which criminals have left behind evidence linking them to the crime scene, we will not do so here. Suffice it to say that we do not conclude that plaintiffs leaving evidence at the crime scene is necessarily evidence of an innocent intent such that defendant Roach did not have probable cause to believe that a crime had been committed.

Next, plaintiffs note that the arrest warrants for Mr. Cox were eventually "quashed on the basis of mistaken identity[;]" the "mistake could have been avoided if the University's staff had done what it should have done, by calling a supervisor or a manager prior to allowing the film loading to proceed[,]" "Defendant Roach made clear his personal animosity and his personal intention of harming the plaintiffs[;]" and "defendants Roach and Adkins were overheard discussing how the forfeiture of money and property would be split between the two law enforcement agencies." We do not find any of plaintiffs' remaining arguments to be persuasive or to have any impact on a determination of probable cause: The fact that Mr. Cox's arrest warrants were quashed for mistaken identity has no bearing on whether defendant Roach acted with probable cause regarding plaintiffs; whether this "mistake" could have been avoided is also irrelevant in analyzing whether defendant Roach acted with probable cause; any "animosity" or bad intent on the part of defendant Roach towards plaintiffs would still not demonstrate that defendant Roach acted without probable cause; and defendants Roach's and Adkins' discussion regarding splitting "the forfeiture of money and property" is

entirely consistent with defendant Roach's belief that there was probable cause, that plaintiffs would be convicted, and thus the law enforcement agencies would be able to keep the money and property. *See Franks*, 438 U.S. at 171, 57 L.E. 2d at 682 (stating that "mistake[s]" and "deliberate falsity or reckless disregard" on the part of those other than the affiant are insufficient bases to challenge probable cause). In conclusion, plaintiffs have not presented a single piece of evidence indicating that defendant Roach lacked probable cause; *i.e.*, that he told a "deliberate falsehood or . . . "reckless[ly] disregard[ed] . . . the truth[.]" *Id.*

Here, plaintiffs do not contest that defendant Roach was informed that some property was stolen; furthermore, plaintiffs do not claim that they did not take the missing property, but instead argue that the taking was lawful. Accordingly, we conclude that defendant Roach acted with probable cause in determining there was "a probability or substantial chance of criminal activity" and on such a basis obtaining and acting on the search and arrest warrants. *Teate*, 180 N.C. App. at 606-07, 638 S.E.2d at 33; *see McKinney*, 361 N.C. at 62, 637 S.E.2d at 874-75,

Here, plaintiffs brought causes of action against defendant Roach for false arrest, false imprisonment, battery, malicious prosecution, gross negligence, conversion, and conspiracy. Plaintiffs have not made allegations of conduct out of the norm for law enforcement officers in performing their duties; thus, all of plaintiffs' claims against defendant Roach stem from the normal course of search, arrest, and prosecution thereafter. However, "[p]robable cause is an absolute bar to a claim for false arrest." *Williams v. City of Jacksonville Police Dept.*, 165 N.C. App. 587, 596, 599 S.E.2d 422, 430 (2004).  .

Furthermore, probable cause is also a bar for recovery for false imprisonment in both North Carolina and Virginia. *See Thomas v. Sellers*, 142 N.C. App. 310, 316, 542 S.E.2d 283, 287 (2001) ("Officer Morton had probable cause to make the arrest, and the trial court did not err in granting summary judgment dismissing plaintiff's claim for false imprisonment."); *Lewis v. Kei*, 708 S.E.2d 884, 891 (Va. 2011) ("Kei had sufficient, if minimal, probable cause to obtain the warrant, properly issued by the magistrate, under which Lewis was arrested. Thus, we hold that Kei did not falsely imprison Lewis[.]").

As plaintiffs' claims for battery hinge upon the "bodily contact" due to the alleged false arrest and imprisonment, plaintiffs' battery claims must also fail. *See State v. Thompson*, 27 N.C. App. 576,

577-78, 219 S.E.2d 566, 568 (1975) ("A battery is the *unlawful* appli-cation of force to the person of another by the aggressor himself or by some substance which he puts in motion." (emphasis added)), *disc. review denied,* 289 N.C. 141, 220 S.E.2d 800 (1976); *Koffman v. Garnett,* 574 S.E.2d 258, 261 (Va. 2003) ("The tort of battery is an unwanted touching which is neither consented to, excused, nor justified.")

Plaintiffs Wallace and Cox were prosecuted in Virginia. However, probable cause is a bar to a claim for malicious prosecution in Virginia. *See O'Connor v. Tice,* 704 S.E.2d 572, 575 (Va. 2011) ("To pre-vail in a malicious prosecution action, Tice had to prove by a prepon-derance of the evidence that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the O'Connors, (3) *without probable cause,* and (4) terminated in a manner not unfavorable to him." (emphasis added)).

Furthermore, plaintiffs' claims for gross negligence are depend-ent upon defendant Roach falsely arresting, falsely imprisoning, battering, and maliciously prosecuting plaintiffs. Plaintiffs alleged that defendant "Roach acted with gross negligence, when he commit-ted actions that caused criminal process to be issued against" plain-tiffs. As the "criminal process" plaintiffs were subject to was lawful, plaintiffs have no wrongful action upon which to base their claim of gross negligence.

Probable cause would also be a bar to conversion as conversion requires an "unauthorized" taking of property. *Stratton v. Royal Bank of Canada,* ___ N.C. App. ___, ___, 712 S.E.2d 221, 227 (2011) ("A con-version is an *unauthorized* assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." (emphasis added) (citation and quotation marks omitted)).

Lastly, plaintiffs' conspiracy claim was also dependent on plain-tiffs' other claims which we have already rejected. Plaintiffs alleged "[e]ach of the defendants agreed with each of the other defendants, to do unlawful acts, including committing false arrests and false imprisonments, committing batteries, committing malicious prosecu-tions, and converting property." As we have already determined that none of plaintiffs' other claims would entitle them to relief, this con-spiracy claim must also fail. As plaintiffs are not "entitled to recover"

upon any of their claims against defendant Roach, the trial court properly granted summary judgment in defendant Roach's favor.[5] *Welch Contracting*, 175 N.C. App. at 50, 622 S.E.2d at 694.

B. Defendants Adkins and Schatzman

As to defendants Adkins and Schatzman, plaintiffs also argue that they acted without probable cause; plaintiffs present no evidence to support their assertion beyond that offered regarding defendant Roach. As we have already determined that plaintiffs' evidence is not sufficient to show a "deliberate falsehood or [a] reckless disregard for the truth[,]" *Franks* at 171, 57 L.E. 2d at 682, on the part of defendant Roach, it is certainly not enough to show the same for defendants Adkins and Schatzman; not only do the facts regarding defendant Roach support our determination that defendants Adkins and Schatzman acted with probable cause, but defendants Adkins and Schatzman had an additional basis for probable cause as they were properly relying on the statements and actions in obtaining warrants made by another law enforcement officer acting with probable cause, defendant Roach. The causes of action against defendant Adkins and Schatzman are the same as those against defendant Roach except for gross negligence. As we have already determined that all of the torts claimed against defendant Roach were properly dismissed via summary judgment upon the basis of probable cause, we conclude the same as to defendant Adkins and Schatzman.

C. Defendant Hartford

Lastly, while it is unclear exactly which causes of action plaintiffs are bringing against defendant Hartford, it is apparent that defendant Hartford is the insurance company which provided a public official bond for defendants Adkins and Schatzman; thus defendant Hartford could only be liable to the extent of any wrongful conduct on the part of defendants Adkins and Schatzman. As we have already determined that all of the causes of action against defendants Adkins and Schatzman were properly disposed of through the trial court's summary judgment order on the basis of probable cause, and the only remaining claim against Hartford is for a bond based upon defendants Adkins' and Schatzman's "unfaithful performance and . . . violation of their duties[,]" this cause of action must also necessarily fail as defend-

_____

5. As we have concluded that the trial court properly granted summary judgment in favor of defendant Roach on the basis of probable cause, we need not address plaintiffs' arguments regarding defendant Roach and sovereign immunity.

ants Adkins and Schatzman were acting with probable cause, and thus not in violation of their duties, so that the trial court properly granted summary judgment in favor of defendant Hartford.

### V. Conclusion

For the foregoing reasons, we conclude that the trial court properly allowed defendant UVA's motion to dismiss on the grounds of sovereign immunity, properly denied plaintiffs' Rule 56(f) motion, and properly granted summary judgment in favor of defendants Roach, Adkins, Schatzman, and Hartford on the grounds of the existence of probable cause. Therefore, we affirm.

AFFIRMED.

Judges BRYANT and CALABRIA concur.