NO. COA13-1096

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

CURTIS RAY HOLMES,
    Plaintiff,

v.                              Guilford County
                                No.  12 CVS 10238
NORTH CAROLINA FARM BUREAU MUTUAL
INSURANCE CO., INC.,
    Defendant.


    Appeal by plaintiff from Order entered 10 July 2013 by Judge John O. Craig, III, in Superior Court, Guilford County. Heard in the Court of Appeals 6 February 2014.


    *Cahoon & Swisher, North & Cooke, by A. Wayland Cooke, for plaintiff-appellant.*

    *Nelson Levine De Luca & Hamilton, LLC, by David L. Brown and David G. Harris II, for defendant-appellee.*


    STROUD, Judge.


    Dr. Curtis Holmes ("plaintiff") appeals from an order denying his motion for summary judgment and granting summary judgment in favor of North Carolina Farm Bureau Mutual Insurance Co., Inc. We affirm.

                        I.    Background

    Plaintiff is a dentist and property owner living in Greensboro. He owns several office buildings in the Greensboro

area, including one at 5415 Friendly Avenue ("5415 Friendly") and one across the street at 5411 Friendly Avenue ("5411 Friendly"). Plaintiff purchased an office-lessor's insurance policy from defendant to cover his property. The policy excludes from coverage any building that has been vacant for more than 60 consecutive days before a loss, including loss by theft. The policy defines a vacant building for property owner policies under section 9(a)(1)(b) of the policy. Under this section, a building is vacant "when 70% or more of its total square footage: (i) Is not rented; or (ii) Is not used to conduct customary operations." The policy clarifies that "[w]hen this policy is issued to the owner of a building, building means the entire building."

In November 2011, someone stole eight heating and air conditioning units from outside 5415 Friendly. Plaintiff informed the police, but the perpetrator was never found. Plaintiff also made a claim to defendant for the loss under the office-lessor policy. Defendant refused to cover plaintiff's loss because it believed that the vacancy provision of the policy applied.

Plaintiff filed a complaint in Guilford County Superior Court alleging breach of the insurance contract and seeking

recovery in excess of $40,000 for the stolen heating units plus attorney's fees and costs. Defendant answered, contending that plaintiff's recovery was barred by the vacancy provision of the insurance contract. Defendant also filed a counterclaim for declaratory judgment concerning the rights and obligations of the parties under this policy. The parties conducted discovery and filed cross-motions for summary judgment. The evidence forecast by the parties tended to show the following:

5415 Friendly has five separate units: named "A," "B," "C," "D," and "G." Unit A was 1,344 square feet; Unit B was 1,064 square feet; Unit C was either 2,688 or 2,577 square feet[1]; Unit D was 2,128 square feet; and Unit G was 1,064 square feet. The total square footage of 5415 Friendly was thus either 8,288 square feet or 8,177 square feet. As of November 2011, only one of the five units at 5415 Friendly was rented—Unit A. Units B, D, and G were all vacant.[2] The classification of Unit C was the primary point of contention at the summary judgment hearing.

The evidence showed that Unit C was not leased in the sixty days before the theft. However, plaintiff had been allowing one

---

[1] In his deposition, plaintiff stated that Unit C was approximately 2,688 square feet. In his responses to defendant's requests for admission, however, he claimed that Unit C was 2,577 square feet.

[2] The evidence showed that plaintiff used Unit D to store excess furniture, but he agreed that it should be considered "vacant."

of the tenants of 5411 Friendly, two independent real estate attorneys named Charles McNeil III and Ken Lucas, to use Unit C as storage for their old files and excess furniture. The attorneys had a key to Unit C and could have used the entire space until plaintiff found a regular tenant. Mr. McNeil and Mr. Lucas kept their files in one 144 square foot room in Unit C. They did not use two additional 144 square foot rooms which contained various furniture of uncertain provenance. The rest of the space was not used.

Mr. McNeil testified that he, Mr. Lucas, or one of their employees would go to Unit C once or twice a week to store, retrieve, or review files. He further stated that they would sometimes sit in one of the chairs in Unit C to review the stored files, but that they normally only stayed five to ten minutes. None of them used any of the space on the second floor of Unit C. Mr. McNeil stated that the storage and review of old files was a "customary operation" of his law practice.

After reviewing the discovery and hearing arguments from the parties, the trial court allowed defendant's motion for summary judgment, and denied plaintiff's motion, by order entered 10 July 2013. Plaintiff filed notice of appeal to this Court on 31 July 2013.

## II.  Summary Judgment

On appeal, plaintiff argues that the trial court erred in granting summary judgment to defendant and denying his motion for summary judgment because the undisputed facts showed that over 30% of 5415 Friendly was either rented or used for customary operations.

A.  Standard of Review

> We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Cox v. Roach*, ___ N.C. App. ___, ___, 723 S.E.2d 340, 347 (2012) (citation and quotation marks omitted), *disc. rev. denied*, 366 N.C. 423, 736 S.E.2d 497 (2013).

B.  Analysis

Both parties agree that there are no genuine issues of material fact. They only disagree on the proper interpretation of the vacancy provision of the insurance contract. That provision states:

**9. Vacancy**

**a.   Description of Terms**

(1)  As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a)  When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b)  When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i)  Is not rented; or
(ii) Is not used to conduct customary operations.

.  .  .  .

**b.    Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1)  We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

.  .  .  .

(e) Theft;

Defendant contends that under the definition in subsection (a)(1)(b), which applies to plaintiff as an owner, if either 30% or less of the entire covered building is rented, or if 30% or

less of the building is used to conduct customary operations, then the building is considered vacant. Under this interpretation, a building could be 30% rented and have another 30% used for customary operations, but the building would still be considered vacant. Plaintiff argues, by contrast, that this provision means that if more than 30% of the building is either rented or used to conduct customary operations, then it is not vacant. Under this interpretation, that same building with 30% rented and 30% used for customary operations would be considered 60% occupied, and therefore not vacant. We conclude that we need not resolve this issue here because even under plaintiff's interpretation of the contract, 5415 Friendly was vacant for more than sixty days before the theft.

It is uncontested that all of Unit A, 1,344 square feet, was rented during the relevant period. Unit A constitutes approximately 16% of the total square footage of the building. Unit C has been the sole point of contention in this case. There was no evidence that it was rented at a relevant time. Therefore, the only question is whether Unit C was used for "customary operations" and how much of Unit C was so used.

The evidence showed that Mr. McNeil and Mr. Lucas only stored files in one 144 square foot room of Unit C. The evidence

did show that Mr. McNeil and Mr. Lucas used that room on a fairly regular basis, once or twice a week. They would store and retrieve client files in the room and sometimes sit in the chair in that room to review the files. Mr. McNeil opined that the storage and review of these archived files was a part of his customary operations. Nevertheless, that 144 square foot room was the only portion of Unit C that they used as part of these operations. Although there was evidence that some pieces of furniture were stored in two additional rooms, there was no evidence that Mr. McNeil and Mr. Lucas ever used those rooms. Mr. McNeil stated that he was unsure who owned the furniture, but that he did not think it was his.

Plaintiff argues that we should count the entirety of Unit C as being "used for customary operations" because one room within that unit was being used and those using it had permission to occupy the entire unit. But that interpretation is contrary to the plain language of the contract.

> The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms

> of the contract to determine the intentions
> of the parties.

*Williams v. Habul*, ___ N.C. App. ___, ___, 724 S.E.2d 104, 111 (citations and quotation marks omitted).

Subsection (b) of the definitional section defines "building" as the "entire building" and defines "vacancy" in relation to the total square footage of the building. While plaintiff contends that not considering all of Unit C "occupied" is "like being a little bit pregnant," the plain language of the contract directs us to consider only the portion of the total square footage "used to conduct customary operations." Therefore, the relevant question under the contract is what percentage of the total square footage was actually so used, not what amount *could* have been used.

Here, only 144 square feet of Unit C were used to conduct customary operations of Mr. McNeil's law practice. Combined with the area of Unit A, which was 1344 square feet, the total square footage either rented or used to conduct customary operations was 1488 square feet. Using either measure of the total square footage—8288 square feet or 8177 square feet—this area does not exceed 30%.[3] We conclude that the uncontested facts show that

---

[3] Using either measure of total square footage, the percentage rented or used was approximately 18%.

5415 Friendly was "vacant" for purposes of the insurance contract for more than 60 days prior to the theft.

As a result, under that contract, plaintiff was not entitled to compensation for his loss and defendant did not breach the contract by refusing to pay the $40,000 to replace the stolen heating units. We hold that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. Therefore, we affirm the trial court's order allowing defendant's motion for summary judgment and denying plaintiff's motion.

### III. Conclusion

For the foregoing reasons, we hold that the trial court correctly determined that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Therefore, we affirm the trial court's order allowing defendant's motion for summary judgment.

AFFIRMED.

Judges CALABRIA and DAVIS concur.